## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:17-cv-01602-RM-MJW

JOSE TREJO;
MARISOL TREJO;
OBDULIA JULIE CORTES;
VILMA DE JESUS ALVARENGA CARRANZA; and those similarly situated,

        Plaintiffs,

    v.

XCLUSIVE STAFFING, INC.;
XCLUSIVE MANAGEMENT, LLC D/B/A XCLUSIVE STAFFING;
XCLUSIVE STAFFING OF COLORADO, LLC;
DIANE ASTLEY; and
WESTIN DIA OPERATOR, LLC,

        Defendants

---

### MOTION PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6) FOR PARTIAL DISMISSAL OF PLAINTIFFS' CLASS AND COLLECTIVE ACTION COMPLAINT

---

Defendants Xclusive Staffing, Inc. ("Xclusive"); Xclusive Management, LLC d/b/a Xclusive Staffing; Xclusive Staffing of Colorado, LLC; Diane Astley; and Westin DIA Operator, LLC ("Westin"), hereinafter referred to collectively as "Defendants," submit this Motion Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for Partial Dismissal of Plaintiffs' Class and Collective Action Complaint (Dkt. No. 1, "Complaint"), and state as follows:

### Compliance with Civ. Practice Standard IV.M.2.a.

On September 11, 2017, Defendants' counsel conferred by email with Plaintiffs' counsel regarding the relief sought in this Motion.  Plaintiffs oppose this Motion.

### INTRODUCTION

This case has been consolidated for the purposes of pretrial discovery with *Valverde v. Xclusive Staffing, Inc.,* 16-cv-00671-RM-MJW (D. Colo.), a case that shares several defendants

with this matter.  Plaintiffs' counsel in this case also represents the plaintiffs in *Valverde*.  On July 22, 2016, the *Valverde* plaintiffs filed an amended complaint containing many of the same factual allegations and claims now alleged in Plaintiffs' Complaint. *See Valverde*, Dkt. No. 52.

On September 15, 2017, this Court dismissed several claims asserted by the *Valverde* plaintiffs.  *See Valverde*, Dkt. 193.  Specifically, pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6), the Court dismissed claims brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), holding that the claims were based on the denial of overtime pay under the Fair Labor Standards Act ("FLSA") and were, therefore, precluded by the FLSA's comprehensive statutory scheme. *Id*. at 9–11.  The Court also dismissed, pursuant to Rule 12(b)(1), claims asserted by the plaintiffs under the laws of states other than Colorado, finding that the plaintiffs lack standing to assert such claims on behalf of themselves or their proposed Rule 23 classes. *Id*. at 22.  Further, the Court dismissed the plaintiffs' promissory estoppel claims, and dismissed their breach of contract, breach of implied contract, and unjust enrichment claims to the extent those claims were based on alleged unpaid overtime. *Id*. at 23.

The claims in this case suffer from the same deficiencies as those in *Valverde*.  The Court should dismiss Plaintiffs' first and second causes of actions under RICO for failing to state a claim for relief.  Plaintiffs' fourth, fifth, and eighth causes of action under the laws of states other than Colorado should also be dismissed because Plaintiffs lack standing to assert those claims on behalf of themselves or any proposed Rule 23 class.  As in *Valverde*, Plaintiffs' promissory estoppel claims should be dismissed because Plaintiffs have failed to allege any detrimental reliance on any of Defendants' alleged promises, and Plaintiffs' contract and implied contract claims should be dismissed to the extent they are based on alleged unpaid overtime.  However, the Court should completely dismiss (rather than merely limit) Plaintiffs' unjust enrichment claims.  As explained below, Plaintiffs' claims for "illegal deductions" under Colorado law also fail to state a plausible claim for relief.

## ARGUMENT

### I.     Legal Standards.

Motions to dismiss under Rule 12(b)(1) may take the form of a "facial attack" on the complaint's allegations concerning subject matter jurisdiction, or a "factual attack" that goes beyond the allegations and challenges the facts on which subject matter jurisdiction is based. *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001).   A facial attack challenging the sufficiency of the complaint requires the court to accept the allegations of the complaint as true.   *Id.*; *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir.1995).   In this Motion, with respect to the Complaint's fourth, fifth, and eighth causes of action, Defendants facially attack Plaintiffs' standing to assert claims under the laws of states other than Colorado.

To establish standing under Article III of the United States Constitution, a plaintiff must show: (1) that he or she has personally suffered an injury in fact; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).   To establish standing, a plaintiff must also satisfy the following prudential principles: (1) the plaintiff must assert his or her own legal rights; (2) the plaintiff's complaint must assert more than "generalized grievances"; and (3) the plaintiff's complaint must fall within the zone of interest to be protected or regulated by the statute or constitutional right in question. *Mount Evans Co. v. Madigan*, 14 F.3d 1444, 1450–51 (10th Cir. 1994).

In reviewing a motion to dismiss under Rule 12(b)(6), the Court views the motion in the light most favorable to the nonmoving party and accepts all well-pleaded facts as true.   *Teigen v. Reffrow*, 511 F.3d 1072, 1079 (10th Cir. 2007).   The facts alleged must be enough to state a claim for relief that is plausible, not merely speculative.   *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007).   A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,*

556 U.S. 662, 678 (2009). "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247–48 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555). "[I]f [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id*.

**II.     Plaintiffs' RICO Claims Should Be Dismissed.**

Plaintiffs assert two RICO claims on behalf of themselves and a proposed "Rule 23 RICO Class," with one claim asserted against Defendant Diane Astley and one claim asserted against Defendant Xclusive. *See* Compl. at pp. 31–32. Both claims should be dismissed because (1) to the extent the RICO claims are based on an alleged failure to provide Plaintiffs with overtime wages, the claims are precluded by the FLSA; (2) Plaintiffs lack standing to assert their RICO claims; and (3) Plaintiffs cannot prove the elements of their RICO claims.[1]

A.     Plaintiffs' RICO claims are precluded by the FLSA.

In *Valverde*, the Court held that the plaintiffs' RICO claims stemmed from their FLSA claims for unpaid overtime and, as a result, the RICO claims were precluded by the FLSA and its remedial scheme. *Valverde*, Dkt. No. 193, at pp. 9–11. The same holds true in this case.

In support of their RICO claims, Plaintiffs allege various fraudulent schemes that all center on Xclusive's pay practices and, at their core, Plaintiffs' RICO claims hinge on allegations that Defendants violated the FLSA. In particular, the alleged "USDOL Scheme" revolves around a policy to automatically deduct lunch breaks from workers' timesheets, regardless of whether the breaks were taken, resulting in underpayment of wages. Compl. at ¶¶ 137–49. The "Website Scheme" involves Xclusive's use of the internet "to fraudulently advertise Xclusive's compliance" with wage laws, which somehow allowed Defendants to underpay its employees.

---

[1] As explained by the Court in *Valverde*, challenges to "RICO standing" are not jurisdictional and should be analyzed under Rule 12(b)(6), rather than Rule 12(b)(1). *See Valverde*, Dkt. No. 193, at p. 9 (*citing Safe Street Alliance v. Hickenlooper*, 859 F.3d 865, 887 (10th Cir. 2017)).

Active/46904364.1

*Id.* at ¶ 150.  The "Electronic Timekeeping Scheme" alleges that Xclusive used timekeeping programs to underreport pay owed to employees.  *Id.* at ¶¶ 160–62.  Finally, the "Faxed Timesheet Scheme" involves faxing handwritten timesheets that underreported the pay owed to employees.  *Id.* at ¶¶ 164–168.  These practices allegedly caused "Plaintiffs . . . to suffer loss of past, current, and prospective wages and to spend unpaid time working. . . ."  *Id.* at ¶¶ 195, 202.  In other words, but for Defendants' alleged underpayment of wages, and "[b]ut for the proscriptions of the FLSA, the Defendant's conduct would not constitute the fraudulent scheme Plaintiffs allege."  *Choimbol v. Fairfield Resorts, Inc.*, 2006 WL 2631791, *7 (E.D. Va. 2006) (holding that FLSA precluded RICO claims).  Accordingly, as in *Valverde*, to the extent Plaintiffs' RICO claims stem from alleged violations of the FLSA, the claims are precluded by the FLSA and should be dismissed.  *See Valverde*, Dkt. No. 193 at pp. 9–11.  *See also DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 515 (E.D.N.Y. 2011).

    B.    <u>Plaintiffs lack standing to bring their RICO claims</u>.

    The Court should also dismiss Plaintiffs' RICO claims because Plaintiffs lack standing to assert their claims.  In addition to constitutional and prudential requirements for standing, plaintiffs asserting a RICO claim must satisfy additional standing criteria that "are more rigorous than that of the Constitution."  *Tal v. Hogan*, 453 F.3d 1244, 1253 (10th Cir. 2006).  Specifically, "[i]n order for a private plaintiff to have standing to bring a RICO claim, he or she must sufficiently allege (1) one or more violations of § 1962; (2) an injury to 'business or property;' and (3) a causal connection - both factual and proximate - between the two."  *Marlow v. Allianz Life Ins. Co. of N. Am.*, 2009 WL 1328636, at *3 (D. Colo. 2009) (*citing Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 265–68 (1992)).

    i.    *Plaintiffs fail to allege a concrete and tangible injury*.

    The second element of RICO standing – an injury to business or property – requires a plaintiff to show a concrete and tangible loss.  *Ivar v. Elk River Partners, LLC*, 705 F. Supp. 2d

1220, 1232 (D. Colo. 2010) (*quoting Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000)). "The logical corollary to the rule that a RICO injury must be concrete and tangible is that it cannot be speculative." *Id*. at 1235. *See also McLaughlin v. American Tobacco Co.*, 522 F.3d 215, 227 (2d Cir. 2008) ("A plaintiff . . . must allege *actual*, quantifiable injury.") (emphasis in original).

Thus, for example, in *FL Receivables Trust 2002-A v. Bagga*, 2005 WL 563535 (E.D. Pa. 2005), the plaintiff brought RICO claims against defendants alleging they had fraudulently induced certain loans. *Id*. at *1. The plaintiff also brought an action to collect on the loans. The *Bagga* court held that plaintiff's RICO claims were not ripe until the collection action had been concluded. In so holding, the court stated, "Plaintiff's injury in this case - the money it lost due to the borrowers' failure to honor the loan agreements - depends directly on the results of Plaintiff's currently pending collection action. To that extent, Plaintiff's injury does not confer standing to bring a RICO claim." *Id*. at *4. *See also Lincoln House, Inc. v. Dupre*, 903 F.2d 845 (1st Cir. 1990) (plaintiff lacked standing for RICO claim because underlying contract claim was unresolved); *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994) (lender lacked standing under RICO until it has foreclosed on all of its loans); *Walter v. Palisades Collection, LLC*, 480 F. Supp. 2d 797, 804 (E.D. Pa. 2007) ("RICO liability cannot attach to future contingent damages."); *LaBarbara v. Angel*, 95 F. Supp. 2d 656, 663 (E.D. Tex. 2000) (plaintiffs lacked standing because the other litigation was still ongoing).

Here, Plaintiffs allege that their RICO injuries consist of unpaid wages they are legally entitled to receive. Compl. at ¶¶ 195, 202. However, Plaintiffs must prevail on their FLSA or state law claims to establish their entitlement to the allegedly unpaid wages – *i.e.,* to show a concrete, rather than a speculative, injury in support of their RICO claims. Because Plaintiffs' RICO claims are not based on *any* concrete, non-speculative injuries, they should be dismissed.

*ii.     Plaintiffs' allegations fail to establish causation.*

A RICO plaintiff must plausibly plead "that the defendant's violation not only was a but for cause of his injury, but was the proximate cause as well." *Safe Street Alliance*, 859 F.3d at 889. Proximate causation "demand[s] . . . some direct relation between the injury asserted and the injurious conduct alleged." *Id. See also Anza v. Ideal Steel,* 547 U.S. 451, 460–61 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries," noting that RICO does not permit suits by those "who have been injured only indirectly").

In *Anza*, the Supreme Court held that a plaintiff could not prove a RICO claim against a business competitor based on that competitor's fraud against the State of New York. 547 U.S. at 457. In particular, the plaintiff could not show proximate causation because "[i]t was the State that was being defrauded [by the competitor's sales tax evasion] and the State that lost tax revenue as a result." *Id.* at 458. The Court acknowledged the plaintiff suffered harm when the competitor did not charge customers sales tax, but noted that "[t]he cause of [plaintiff's] asserted harms, however, is a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)." *Id.*

Similarly, in *Holmes*, the Supreme Court addressed RICO claims based on the alleged manipulation of stocks. 503 U.S. at 261. The plaintiff was an investor protection corporation with subrogated rights to sue on behalf of the customers of injured broker-dealers. *Id.* at 270-71. Discussing the proximate cause element, the Court held that "the link [was] too remote between the stock manipulation alleged and the customers' harm, being purely contingent on the harm suffered by the broker-dealers." *Id.* at 271. As explained by the Court, "a plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [i]s generally said to stand at too remote a distance to recover [under RICO]." *Id.* at 268–69.

Active/46904364.1

In this case, Plaintiffs have not alleged facts that, if true, establish causation.  For instance, Plaintiffs allege that as part of the "USDOL Scheme," Ms. Astley made fraudulent statements to the USDOL, which the agency then relied upon "in deciding its dispositions" of two investigations concerning Xclusive's pay practices.  Compl. at ¶¶ 141, 143.  As in *Anza*, these allegations – even if true – only relate to defrauding of the government, and fail to establish that any statements to the government were actual or proximate causes for Plaintiffs' lost wages.

In fact, Plaintiffs' allegations regarding the "USDOL scheme" relate to Xclusive's pay practices at only two hotels – the Grand Hyatt and the Hampton Inn & Suites – and the USDOL's "disposition" of investigations at those hotels.  Compl. at ¶¶ 138–40, 143.  None of the Plaintiffs allege that they performed work at the latter hotel, and therefore, any fraudulent statements to the USDOL concerning pay practices at that location cannot be an actual or proximate cause for Plaintiffs' lost wages.  Moreover, although Ms. Trejo, Mr. Cortes, and Ms. Alvarenga allege they performed some work at the Grand Hyatt, none of them allege that they were underpaid while working there.  In short, there are no allegations showing a causal link between Plaintiffs' lost wages and any alleged fraudulent statements made to the USDOL.

Regarding the remaining "schemes" – the "Website Scheme," the "Electronic Timekeeping Scheme," and the "Faxed Timesheet Scheme" – although Plaintiffs allege that each scheme misled Xclusive's clients, there is no allegation that Plaintiffs were directly harmed.  Compl. at ¶¶ 154, 162, 168.  Like the RICO allegations in *Holmes*, these allegations are insufficient to establish causation.  *Holmes*, 503 U.S. at 268–69 ("[A] plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [i]s generally said to stand at too remote a distance to recover [under RICO].").  Indeed, the Complaint is devoid of any allegation that any of Xclusive's clients – or any of the Plaintiffs themselves – relied in any way on any fraudulent or misleading statements made by any of the Defendants, which is reason enough, by itself, to dismiss Plaintiffs' RICO claims.  *See CGC*

*Holding Co., Ltd. Liab. Co. v. Broad & Cassel*, 773 F.3d 1076, 1089 (10th Cir. 2014) ("[I]n [RICO] cases arising from fraud, a plaintiff's ability to show a causal connection between defendants' misrepresentation and his or her injury will be predicated on plaintiff's alleged reliance on that misrepresentation" because "causation is often lacking where plaintiffs cannot prove that they relied on defendants' alleged misconduct.").

      C.    <u>Plaintiffs cannot prove the elements of their RICO claims.</u>

In addition to the "RICO standing" elements, the remaining elements of a civil RICO claim "are (1) investment in, control of, or conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity." *Dewey v. Lauer*, 2009 WL 3234276, *3 (D. Colo. Sep. 2009) (quoting *Tal*, 453 F.3d at 1261) (internal quotation marks omitted). Plaintiffs' RICO claims should be dismissed because Plaintiffs fail to allege the existence of an appropriate enterprise and fail to allege any actionable racketeering activity.

      *i.*    *The Complaint does not allege an appropriate enterprise.*

Under RICO, an enterprise is "any individual . . . corporation, association . . . and any . . . group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct and requires evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Internet Archive v. Shell*, 505 F. Supp. 2d 755, 769 (D. Colo. 2007) (internal quotation marks omitted).

Plaintiffs' first RICO claim alleges two possible enterprises, both called the "Astley Enterprise." Compl. at ¶¶ 125–26, 191–96. The first purported enterprise is described as follows: "[a]s the owner of Xclusive, Defendant Astley formed an association-in-fact with Xclusive and all of its associated entities and subsidiaries, which shall be referred to as the 'Astley Enterprise'" (hereinafter the "First Purported Enterprise"). Compl. at ¶ 125. With regard to the Second Purported Enterprise, Plaintiffs state, "[i]n the alternative, Xclusive and all

of its associated entities and subsidiaries formed an[] association-in-fact [also] called the 'Astley Enterprise.'" (hereinafter the "Second Purported Enterprise").  Compl. at ¶ 126.  Plaintiffs' second RICO claim alleges an enterprise labelled the "Xclusive Enterprise," consisting of only Xclusive and its clients, including Westin.  Compl. at ¶¶ 132, 198–203.

    1.  The First Purported Enterprise fails to support a RICO claim.

  "Enterprise liability under RICO depends on showing that the defendant conducts or participates in the conduct of the enterprise's affairs, not just its own affairs . . . . A separate enterprise is not demonstrated by the mere showing that the corporation committed a pattern of predicate acts in the conduct of its own business."  *Internet Archive,* 505 F. Supp. 2d at 769 (*quoting Brannon v. Boatmen's First Nat. Bank of Okla.*, 153 F.3d 1144, 1146 (10th Cir. 1998). Thus, "officers and employees of an organization cannot, in the ordinary course of their duties, constitute an association in fact separate from the organization itself." *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1249 (10th Cir. 2016) (*quoting Bd. of Cty. Comm'rs of San Juan Cty. v. Liberty Grp.*, 965 F.2d 879, 885–86 (10th Cir. 1992)).

  Plaintiffs allege that Ms. Astley 100% owns Xclusive.  Compl. at ¶ 125.  Plaintiffs also allege that Ms. Astley is "involved in the daily operations of Xclusive"; that she established Xclusive's pay practices; that she was responsible for meeting with the DOL during their investigations; and that it was her representations to the DOL that form the basis for their first RICO claim. Compl. at ¶¶ 21, 127–28.  Accordingly, Ms. Astley is part of, and not separate from, Xclusive, meaning Plaintiffs are unable to meet the requirements of an enterprise.  *Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local*, 883 F.2d 132, 141 (D.C. Cir. 1989) ("[A]n organization cannot join with its own members to do that which it normally does and thereby form an enterprise separate and apart from itself."); *List Interactive, Ltd. v. Knights of Columbus,* 2017 U.S. Dist. LEXIS 118733, *37 (D. Colo. 2017) ("[A]n 'enterprise' alleged to

consist merely of the corporation and its employees or the corporation and its subsidiaries and agents is deemed insufficiently distinct to satisfy this [enterprise] requirement.").

        2.      The Second Purported Enterprise fails to support a RICO claim.

Courts from around the country, including the Tenth Circuit, regularly hold that a parent company and its wholly owned subsidiaries typically cannot form an enterprise for RICO purposes. *See e.g., Chagby v. Target Corp.,* 358 Fed. App'x 805, 808 (9th Cir. 2009) (holding that allegations of an enterprise between a parent "and its wholly-owned subsidiaries fail[ ] to meet the distinctiveness requirement of civil RICO claims."); *Bucklew v. Hawkins, Ash, Baptie & Co., LLP,* 329 F.3d 923, 934 (7th Cir. 2003) ("A parent and its wholly owned subsidiaries no more have sufficient distinctness to trigger RICO liability than to trigger liability for conspiring in violation of the Sherman Act . . . ."); *Bessette v. Avco Fin. Servs., Inc.,* 230 F.3d 439, 449 (1st Cir. 2000) ("Without further allegations, the mere identification of a subsidiary and a parent in a RICO claim fails the distinctiveness requirement."); *Brannon v. Boatmen's First Nat. Bank of Oklahoma,* 153 F.3d 1144, 1149 (10th Cir. 1998) ("It is insufficient . . . merely to assert that a defendant corporation accused of racketeering is a subsidiary and therefore automatically conducts the affairs of its parent"; the plaintiff instead must show how the relationship between the subsidiary and parent "allowed the [subsidiary] to perpetrate or conceal the alleged mail fraud."); *Knights of Columbus,* 2017 U.S. Dist. LEXIS 118733 at *37 ("[A]n 'enterprise' alleged to consist merely of the corporation and its employees or the corporation and its subsidiaries and agents is deemed insufficiently distinct to satisfy this requirement."). Plaintiffs' Second Purported Enterprise merely consists of "Xclusive and all of its associated entities and subsidiaries," without further allegations supporting an appropriate enterprise, and therefore Plaintiffs cannot maintain any RICO claims based on the its alleged activities.

Furthermore, because Plaintiffs' first RICO claim is only brought against Ms. Astley, she must be part of the Second Purported Enterprise in order for her to be liable for its conduct. *See*

Active/46904364.1

*Internet Archive*, 505 F. Supp. 2d at 769 ("Enterprise liability under RICO depends on showing that the *defendant conducts or participates* in the conduct of the enterprise's affairs, not just its own affairs . . . .") (emphasis added); *George*, 833 F.3d at 1249 (the plaintiff in a RICO case must establish that "*the defendant* conducted the affairs of the enterprise.") (emphasis added). Because Ms. Astley is not part of Plaintiffs' Second Purported Enterprise, that alleged enterprise fails to support Plaintiffs' first RICO claim against Ms. Astley.

3.      The Xclusive Enterprise fails to support a RICO claim.

Plaintiffs' "Xclusive Enterprise" allegations attempt to solve the fatal flaws underlying the First and Second Purported Enterprises by adding Xclusive's clients as members of an alleged enterprise. This sham is unavailing, however. To allege an appropriate RICO enterprise, a plaintiff must allege that its participants, including its non-defendant participants, took some action in furtherance of the alleged enterprise and its unlawful conduct. *See Airquip, Inc. v. HomeAdvisor, Inc.*, 2017 U.S. Dist. LEXIS 154738, *11 (D. Colo. 2017). The Complaint fails to allege that any Xclusive clients acted in furtherance of the fraud allegedly committed. Indeed, the Complaint identifies Xclusive's clients as *victims* of fraud, rather than its perpetrators. Compl. at ¶¶ 154, 162, 168.

Even if some allegation in the Complaint could be twisted and read as an allegation that (unidentified) clients acted in furtherance of an enterprise's fraudulent schemes, those allegations must be made with particularity, as explained further below. *See Tal*, 453 F.3d at 1263. The Complaint, however, fails to do so and, in fact, fails to even identify which particular clients acted in furtherance of any alleged fraudulent schemes. *Id*. (RICO claim alleging wire or mail fraud must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof"). Accordingly, Plaintiffs allegations fail to show that Xclusive's clients were part of the "Xclusive Enterprise," and because only one entity remains as part of that alleged enterprise (*i.e.,* Xclusive), Plaintiffs have

12

not alleged an enterprise capable of supporting their second RICO claim.  *See* 18 U.S.C. § 1961(4) (indicating that an "enterprise" must contain at least two entities).

iii.    <u>The Complaint fails to allege a racketeering activity.</u>

The Complaint relies only upon alleged violations of the mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, as acts of a racketeering activity.  The essential elements of an offense for of wire fraud (or mail fraud) are: (1) a scheme or artifice to defraud or obtain property by means of false or fraudulent pretenses, representations, or promises to the complaining individual; (2) an intent to defraud; and (3) use of the wires (or mail) to execute the scheme.  *U.S. v. Haber*, 251 F.3d 881, 887 (10th Cir. 2001); *U.S. v. Smith*, 133 F.3d 737, 742 (10th Cir. 1997).

RICO claims alleging mail or wire fraud as a racketeering activity must also satisfy Rule 9(b) – which requires allegations of fraud to be pled with particularity and, in a RICO case, requires a plaintiff to "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."  *Tal,* 453 F.3d at 1263.  A plaintiff must also "identify the purpose" of the use of the mail or wires within the fraudulent scheme.  *Id.*  In addition, "[w]hen a plaintiff is dealing with more than one defendant, he or she is under a Rule 9(b) obligation to specify which defendant told which lie and under what circumstances."  *Brooks v. Bank of Boulder,* 891 F. Supp. 1469, 1477 (D. Colo. 1995).

1.    The alleged mail fraud does not establish any racketeering activity.

The Complaint's only mail fraud allegations relate to the "USDOL Scheme." Specifically, the Complaint alleges that "[t]he Astley Enterprise and Xclusive Enterprise used the mail . . . in furtherance of the fraudulent scheme directed toward the DOL by transmitting fraudulent pay records and checks between Xclusive branches, and Xclusive employees and clients."  Compl. at ¶ 144.  It also alleges the enterprises used the mail "to send time records to its corporate office," and "to send resulting pay checks back to its branch offices."  *Id*. at ¶ 145.

13

These mail fraud allegations are insufficient to support a RICO claim, as they lack the detail and particularly required by Rule 9(b).  *See Tal*, 453 F.3d at 1263; *Brooks,* 891 F. Supp. at 1477.

Even if the allegations were fleshed out, it would be of no moment.  As explained by several courts, mailing fraudulent documents must be "in furtherance" of a fraudulent scheme, but mailing time records and paychecks are not in furtherance of any scheme to withhold wages because those documents reveal (rather than conceal) that employees are not being paid for all time worked.  *See, e.g., Lundy v. Catholic Health Sys.*, 711 F.3d 106, 119–20 (2d Cir. 2013).  *See also Schmuck v. United States*, 489 U.S. 705, 710–11 (1989) (use of the mail or wires must be "incident to an essential part of the scheme or a step in the plot").  Thus, even if (unidentified) members of the enterprises mailed false time records and paychecks to Xclusive's offices, clients, and employees, it was not "in furtherance" of any scheme.  Indeed, Plaintiffs fail to allege how such mailings were in furtherance of the scheme allegedly directed at the USDOL.

Moreover, Plaintiffs' allegations regarding the "DOL Scheme" allege that fraudulent mail (and wire) transmissions occurred *after* the DOL's investigation concluded.  Compl. at ¶ 142. Mailings and wires that are sent after the fraudulent scheme comes to fruition are generally not considered "in furtherance" of the scheme.  *See United States v. Maze*, 414 U.S. 395, 396–397, 402–03 (1974) (finding that, where the defendant stole a credit card to make purchases, subsequent mailings of invoices from merchants to the bank, and from the bank to the cardholder for payment, were not in furtherance of the fraudulent scheme because the scheme already came to fruition when the defendant used the stolen card to receive goods).  In sum, Plaintiffs' mail fraud allegations cannot support their RICO claims.[2]

---

[2] Furthermore, as a matter of law, paychecks cannot constitute misrepresentations.  *Williams v. U.S.*, 458 U.S. 279, 284-85 (1982).  In *Williams*, the defendant deposited checks that were not supported by sufficient funds, and he was later convicted of making false statements to influence certain financial institutions.  In reversing the conviction, the Supreme Court explained that the defendant did not make a false statement because "a check is not a factual assertion at all."  *Id*. In short, Plaintiffs' allegations fail to state a plausible RICO claim based on mail fraud.

Active/46904364.1

2.   The wire fraud allegations do not establish any racketeering activity.

Plaintiffs' wire fraud allegations are also lacking.  With regard to the "USDOL Scheme," the alleged misrepresentations were made by Ms. Astley in person, rather than by wire.  Compl. at ¶ 137–138, 140.  Therefore, even if those misrepresentations occurred, they are irrelevant to Plaintiffs' RICO claims.  The only remaining allegations regarding misrepresentations by wire transmission are the same conclusory allegations identified above relating to Plaintiffs' mail fraud allegations.  *See* Compl. at ¶¶ 144–45.  Just as those non-particularized allegations fail to establish mail fraud, they also fail to establish wire fraud.  Specifically, the allegations fail to satisfy the requirements of Rule 9(b), and fail to establish that any transmissions were "in furtherance" of any fraudulent scheme, including the one allegedly directed at the USDOL.

Plaintiffs' allegations regarding the "Website Scheme" also fail to establish any racketeering activity based on wire fraud.  Plaintiffs allege that Xclusive's website "fraudulently advertise[s] Xclusive's compliance with state and federal minimum wage laws."  Compl. at ¶ 150–52.  These allegations do not identify the Defendants responsible for the statements, and therefore fail to satisfy Rule 9(b).  *See Tal*, 453 F.3d at 1263; *Brooks,* 891 F. Supp. at 1477.  Furthermore, Plaintiffs provide no allegations showing that the statements were the actual or proximate cause for their alleged lost wages.  More fundamentally, statements regarding compliance with the law cannot support allegations of mail or wire fraud because misrepresentations of law *are not actionable as fraud.  See*, *e.g., Presidio Expl., Inc. v. Alexander Energy Corp.*, 986 F.2d 1428 (10th Cir. 1993) ("a plaintiff cannot predicate a fraud claim on a misrepresentation of law because everyone is presumed to know the law . . .  [O]ne has no right to rely on such representations or opinions and will not be permitted to say that he was misled by them.").  *See also Miller v. Yokohama Tire Corp.,* 358 F.3d 616, 621 (9th Cir.

2004) ("It is . . . well-settled, as a general rule, that fraud cannot be predicated upon misrepresentations of law or misrepresentations as to matters of law.").

Regarding the "Electronic Timekeeping Scheme," the sole allegation identifying any fraudulent or misleading statements in an allegation that "the Astley Enterprise and Xclusive Enterprise use these online [electronic recordkeeping] platforms to make repeated, intentionally-false statements over the wires regarding employee work hours."  Compl. at ¶ 160.  Plaintiffs, however, make no allegations regarding who actually inputs the information into the electronic timekeeping systems and who is making the "statements" regarding hours worked in the electronic timekeeping systems.  As such, the allegations fail to satisfy Rule 9(b).  Moreover, Plaintiffs fail to allege that such "statements" are being asserted by Defendants or any particular member of any alleged enterprise and, as noted above, transmitting documents that underreport work time and payments owed are not "in furtherance" of any scheme because they tend to reveal (rather than conceal) underpayment of wages.

Plaintiffs' allegations relating to the "Faxed Timesheet Scheme" suffer from the same deficiencies.  Plaintiffs make conclusory allegations that the Astley and Xclusive Enterprises use handwritten timesheets "to make repeated, intentionally false statements over the wires regarding employee work hours."  Compl. at ¶ 164.  Again, these vague allegations do not meet the particularity requirements set forth in Rule 9(b), and do not establish any transmissions "in furtherance" of a fraudulent scheme.  Plaintiffs simply have not alleged any viable RICO claims.

### III.   Plaintiffs Lack Standing to Bring Their Fourth, Fifth, and Eighth Causes of Action on Behalf of Classes Outside of Colorado.

In their fourth, fifth, and eighth causes of action, Plaintiffs assert claims for unpaid wages under the laws of Colorado and certain other states, both on behalf of themselves and various Rule 23 classes.  The plaintiffs in *Valverde* asserted the same multi-state class action claims.  *See Valverde*, Dkt. No. 52.  Like the plaintiffs in *Valverde*, the Plaintiffs here are Colorado residents

who only allege they performed work for Defendants in Colorado; they fail to allege they performed work for Defendants in any other state.

In *Valverde*, the Court held the plaintiffs lacked standing to assert their claims under the laws of states other than Colorado. *See Valverde*, Dkt. No. 193 at 14–15 (citing cases). The same result is required here. None of the Plaintiffs allege they suffered any injury outside of the state of Colorado that would allow them to assert legal rights under the laws of those other states. *Lujan*, 504 U.S. at 555 (standing requires plaintiffs to show an injury in fact); *Mount Evans*, 14 F.3d at 1450–51 (plaintiffs must assert their own legal rights). Thus, to the extent Plaintiffs' fourth, fifth, and eighth causes of action seek relief for Plaintiffs and purported class members based on the laws of states other than Colorado, Plaintiffs do not have standing to assert those claims, and the claims must be dismissed.

## IV.    Plaintiffs Fail to State a Claim for "Illegal Deductions" Under Colorado Law.

In their seventh cause of action, Plaintiffs assert claims against Xclusive and Westin for "illegal deductions" under Colorado law on behalf of themselves and various Rule 23 subclasses. Specifically, Plaintiffs allege that Xclusive and Westin made certain deductions from their paychecks in violation of Colo. Rev. Stat. § 8-4-105. Compl. at ¶ 235. However, Colo. Rev. Stat. § 8-4-105 permits an employer to make deductions from an employee's wages or compensation for a number of reasons. Among other things, deductions may be made "for loans, advances, goods or services, and equipment or property provided by an employer . . . pursuant to a written agreement between such employer and employee, so long as it is enforceable and not in violation of law." Colo. Rev. Stat. § 8-4-105(1)(b) (2017). The statute also permits any other deduction "authorized by an employee if the authorization is revocable." *Id*. at § 8-4-105(1)(d).

In the Complaint, each Plaintiff alleges that Xclusive deducted $3 from each paycheck as an administrative charge. Compl. at ¶¶ 42–43, 98. Ms. Trejo alleges that, in addition, Xclusive made "other deductions" from her paycheck, including the cost of uniforms and name tags.

Active/46904364.1

Compl. at ¶¶ 59–60.  Ms. Cortes and Ms. Alvarenga also allege their paychecks included deductions for background checks, uniforms, and name tags.  Compl. at ¶¶ 70–71, 82–83.

These allegations fail to state a plausible claim for relief because Plaintiffs do not allege anywhere in the Complaint that any of the deductions were unauthorized.  Furthermore, although each Plaintiff alleges that he or she entered into a written employment agreement with Xclusive (*see* Compl. at ¶¶ 24, 44, 61, 72), the Complaint does not address whether the written agreements permitted the deductions.  On the contrary, Plaintiffs allege that "[t]he form contract provided by Xclusive to all workers, including Plaintiffs, states that $3 is deducted from every weekly paycheck of every Xclusive employee."  Compl. at ¶ 99.  In other words, Plaintiffs admit they signed contracts permitting the $3 deductions.

As noted above, "[i]f [allegations in a complaint] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Robbins,* 519 F.3d at 1247 (explaining also that "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief").  In the absence of any allegation that paycheck deductions were unauthorized, and in light of the fact that each Plaintiff admittedly signed contracts permitting the $3 deductions, the Complaint fails to allege facts establishing that the deductions were unlawful.  Plaintiffs' seventh cause of action should be dismissed.

## V.     Plaintiffs' Contract and Quasi-Contract Claims Fail.

Plaintiffs' eighth cause of action asserts claims for breach of contract, breach of implied-in-fact contracts, unjust enrichment, and promissory estoppel under the laws of Colorado and several other states.  Compl. at pp. 38–39.  As noted above, claims asserted under the laws of states other than Colorado must be dismissed based on Plaintiffs' lack of standing to assert those claims.  However, the remaining claims asserted under Colorado law should also be dismissed for failure to state a claim for relief.

Active/46904364.1

In support of Plaintiffs' breach of contract and implied contract claims under Colorado law, Plaintiffs allege they entered into employment contracts that promised payment of an hourly wage for all hours worked and that "incorporate[ed] state and federal wage and hour laws." Compl. at ¶¶ 241–42. Plaintiffs allege that Defendants breached the contracts by "not compensating employees for all hours worked," including overtime hours. *Id.* at ¶¶ 243–44. As in *Valverde*, to the extent these claims are based on nonpayment of overtime wages, the claims are preempted by the FLSA and must be dismissed. *See Valverde*, Dkt. No. 193 at pp. 19–20 (citing cases). *See also Barnett v. Pikes Peak Cmty. Coll. Police Dep't*, 2015 WL 4245822 (D. Colo. 2015) (plaintiffs' breach of contract claims for overtime wages preempted by FLSA).

The Court should also dismiss Plaintiffs' unjust enrichment claims. In Colorado, an unjust enrichment claim "cannot be maintained where the parties have reached an agreement between themselves as to the terms upon which compensation will be paid []absent an allegation that the agreement is invalid or unenforceable . . . ." *Perez* v. *Pinon Mgmt. Inc.*, 2013 WL 1149567, *9 (D. Colo. 2013). Thus, in *Perez*, the court dismissed plaintiff's unjust enrichment and quantum meruit claims where plaintiff alleged "a contractual relationship existed between [herself] and Defendants wherein Defendants agreed to pay [her] for all hours worked." *Id.*

Here, Plaintiffs admit they were a party to an employment contract with Xclusive that promised payment of "an hourly wage for all hours worked" and that "incorporate[ed] state and federal wage and hour laws." Compl. at ¶¶ 241–42. Plaintiffs do not allege the contracts are invalid or unenforceable. Thus, Plaintiffs' unjust enrichment claims are barred by the existence of their alleged employment agreements. Furthermore, to the extent Plaintiffs' unjust enrichment claims are based on an alleged failure to pay overtime wages, they are preempted by the FLSA, just like the unjust enrichment claims in *Valverde*. *See Valverde*, Dkt. No. 193, at pp. 19–20, 23.

Finally, the Court should also dismiss Plaintiff's promissory estoppel claim, just as it did in the *Valverde* case. In Colorado, a promissory estoppel claim requires an employee to show:

(1) a promise by an employer that it should reasonably have expected the employee to rely upon; (2) reasonable and detrimental reliance on the promise by the employee; and (3) that injustice can be avoided only by enforcement of the promise. *Cont'l Air Lines. V. Keenan*, 731 P.2d 708, 712 (Colo. 1987).  In *Valverde*, the Court dismissed the plaintiffs' promissory estoppel claim because the plaintiffs failed to allege facts supporting the second element of their claim – *i.e.*, they failed to allege they reasonably and detrimentally relied on a promise made by Defendants. *Valverde*, Dkt. No. 193, at p. 20.  The same is true here; Plaintiffs fail to allege detrimental reliance on any promise made by Defendants, and therefore, the claim should be dismissed.

## <u>CONCLUSION</u>

For all the foregoing reasons, Defendants request that the Court grant this Motion in its entirety, and award Defendants such other relief as it deems just and appropriate.

Dated: October 10, 2017.

SHERMAN & HOWARD L.L.C.

*s/ Matthew M. Morrison*
Jonathon M. Watson
Matthew M. Morrison
633 Seventeenth Street, Suite 3000
Denver, CO  80202
Telephone:  (303) 297-2900
Email:  mmorrison@shermanhoward.com
Email:  jwatson@shermanhoward.com

*Attorneys for Defendants*

Active/46904364.1

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on this 10th day of October, 2017, I electronically filed the foregoing **DEFENDANTS' MOTION PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6) FOR PARTIAL DISMISSAL OF PLAINTIFFS' CLASS AND COLLECTIVE ACTION COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

> Alexander Hood
> David Seligman
> TOWARDS JUSTICE
> 1535 High St., Suite 300
> Denver, CO  80218
> *Attorneys for Plaintiffs*
> alex@towardsjustice.org
> david@towardsjustice.org

*s/ Lynn Z. Howell*

Active/46904364.1