**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:17-cv-01602-RM-MJW

JOSE TREJO;
MARISOL TREJO;
OBDULIA JULIE CORTES;
VILMA DE JESUS ALVARENGA CARRANZA; and those similarly situated,

      Plaintiffs,

  v.

XCLUSIVE STAFFING, INC.;
XCLUSIVE MANAGEMENT, LLC D/B/A XCLUSIVE STAFFING;
XCLUSIVE STAFFING OF COLORADO, LLC;
DIANE ASTLEY; and
WESTIN DIA OPERATOR, LLC,

      Defendants.

---

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PARTIAL DISMISSAL
OF PLAINTIFFS' CLASS AND COLLECTIVE ACTION COMPLAINT**

---

Defendants Xclusive Staffing, Inc. ("Xclusive"); Xclusive Management, LLC d/b/a Xclusive Staffing; Xclusive Staffing of Colorado, LLC; Diane Astley; and Westin DIA Operator, LLC ("Westin"), referred to collectively as "Defendants," submit this Reply in support of their Motion (Dkt. No. 20, "Motion") for partial dismissal of Plaintiffs' Class and Collective Action Complaint (Dkt. No. 1, "Complaint"), and state as follows:

**INTRODUCTION**

As noted in Defendants' Motion, this case has been consolidated for the purposes of pretrial discovery with *Valverde v. Xclusive Staffing, Inc.,* 16-cv-00671-RM-MJW (D. Colo.); Plaintiffs' counsel in this case also represent the plaintiffs in *Valverde*; the plaintiffs in *Valverde* and the Plaintiffs in this case have filed complaints with nearly identical factual allegations and claims; and in *Valverde*, the Court dismissed the same claims that Defendants now seek to dismiss in this matter. As explained below, Plaintiffs' Response to Defendants' Motion (Dkt. No. 25, "Response") often rehashes the same arguments made by the plaintiffs in *Valverde,* and

already rejected by the Court in that case.  Although Plaintiffs explain that they "respectfully disagree" with the Court's rulings in *Valverde*, there is no reason to reach different results here, and the Court should grant Defendants' Motion in its entirety.[1]

## ARGUMENT

### I.   Plaintiffs' RICO Claims Should Be Dismissed.

Courts have described civil RICO claims as "an unusually potent weapon – the litigation equivalent of a thermonuclear device." *Brookhaven Town Conservative Comm. v. Walsh*, 258 F. Supp. 3d 277, 283 (E.D.N.Y. 2017).  As explained by the *Walsh* court:

> Because the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation. Indeed, although civil RICO may be a 'potent weapon,' plaintiffs wielding RICO almost always miss the mark.

*Id*. (quotation marks and citations omitted).   Courts have, therefore, cautioned that "particular care is required when evaluating a RICO claim at the Rule 12 stage to prevent abusive or vexatious treatment of defendants."  *Bendfeldt v. Window World, Inc.*, 2017 WL 4274191, *6 (W.D. N.C. 2017) (quotation marks omitted); *Polzin v. Barna & Co.*, 2007 U.S. Dist. LEXIS 68221, *13 (E.D. Tenn. 2007) ("Mere invocation of the statute has such an *in terrorem* effect that it would be unconscionable to allow it to linger in a suit and generate suspicion and unfavorable opinion of the putative defendant unless there is some articulable factual basis which, if true, would warrant recovery under the statute.").  *See also Midwest Grinding Co., Inc. v. Spitz,* 976 F.2d 1016, 1025 (7th Cir. 1992) (observing that "[w]hile it is clear that the scope of civil RICO extends beyond the prototypical mobster or organized crime syndicate . . ., it is

---

[1] Plaintiffs argue that Defendants failed to fully confer regarding the Motion, but this argument should be rejected.  Plaintiffs clearly told Defendants that they had no intention of dropping their RICO claims and non-Colorado state law claims.  *See* Dkt. No. 25-1 at p. 5.  Furthermore, Plaintiffs' argument rings hollow; in response to Defendants' Motion, Plaintiffs have not sought to file an amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1)(B) and have, instead, argued in their Response that their allegations are sufficient to support their claims.

equally evident that RICO has not federalized every state common-law cause of action available to remedy business deals gone sour," and noting "[t]he widespread abuse of civil RICO stems from the fact that all modern business transactions entail use of the mails or wires – giving plaintiffs the [appearance of a] jurisdictional hook"); *Kirk v. Heppt*, 423 F. Supp.2d 147, 150 (S.D.N.Y 2006) (noting that courts "must be wary of putative civil RICO claims that are nothing more than sheep masquerading in wolves' clothing"). With these lessons in mind, Plaintiffs' RICO claims should be dismissed.

        A.     <u>Plaintiffs' RICO claims are precluded by the FLSA</u>.

Defendants' Motion seeks dismissal of Plaintiffs' RICO claims for the same reason the Court dismissed the RICO claims in *Valverde*. Motion at 4–5. Namely, to the extent Plaintiffs' RICO claims stem from alleged violations of the FLSA, the claims are precluded by the FLSA and should be dismissed. *See Valverde*, Dkt. No. 193 at pp. 9–11. In their Response, Plaintiffs merely state their disagreement with the *Valverde* holding, and then briefly make the same arguments previously rejected by the Court in that case. *Id.*; Response at 3. Accordingly, here the Court should now hold that, to the extent Plaintiffs' RICO claims stem from alleged violations of the FLSA, the claims must be dismissed.

        B.     <u>Plaintiffs also lack standing to bring their RICO claims</u>.

              i.     *Plaintiffs fail to allege a concrete and tangible injury*.

To sustain a RICO claim, Plaintiffs' alleged injury must be based on "a concrete financial loss." *Ivar v. Elk River Partners, LLC*, 705 F. Supp. 2d 1220, 1232 (D. Colo. 2010). Plaintiffs' alleged injuries are wages they believe are owed to them ***under other laws***, which Plaintiffs seek to recover through ***other claims*** asserted in the Complaint. Compl. at ¶¶ 195, 202. Thus, Plaintiffs' alleged RICO injuries – *i.e.*, money allegedly owed for unpaid wages – depends directly on the result of their other claims. Unless Plaintiffs prevail on their underlying wage claims, they have no RICO injury.

Plaintiffs attempt to characterize Defendants' argument as "foreclose[ing] civil RICO liability in any case where the plaintiff also asserts a non-RICO claim seeking recovery of damages for the plaintiffs' monetary harm . . . ." Response at 4. The deficiency in Plaintiffs' RICO claim is not that it is brought simultaneously with other claims, but that Plaintiffs cannot prove a "concrete financial loss" unless and until they prevail on their other claims in this case – *i.e.*, unless and until they show that other laws entitle them to recover alleged unpaid wages. Stated differently, the only purported financial injury underlying Plaintiffs' RICO claim is allegedly unpaid wages, and Plaintiffs are only able to show they are entitled to such wages if they prevail on their wage claims. Accordingly, Plaintiffs are unable to show any "concrete financial loss."

Plaintiffs' reliance on *Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339 (11th Cir. 2008) is misplaced. In *Renta*, the Eleventh Circuit – like Plaintiffs here – construe the standing argument as being grounded in a theory that both a RICO claim and other claim may not proceed simultaneously. *See* 503 F. 3d at 1351. Again, Defendants do not suggest a broad sweeping rule that RICO claims may not be brought in the same action with other claims. Rather, RICO claims may only be founded on an actual, cognizable, and non-speculative injury. Indeed, as Plaintiffs quoted from *Renta* in their Response, "whether a plaintiff must pursue other remedies before a RICO claim depends on whether those other contingencies are sufficiently likely to mitigate the plaintiff's loss that damages in the RICO case cannot be ascertained, or may not have occurred at all." Response at 6 (*quoting Renta*, 503 F. 3d at 1351). Plaintiffs' RICO injuries depend entirely on the success of their other claims and, thus, RICO damages "may not have occurred at all." The RICO claims fail and must be dismissed.

        *ii.*     *Plaintiffs' allegations fail to establish causation.*

Plaintiffs argue that the mail and wire fraud alleged in the Complaint was a "but for" and proximate cause for their alleged injuries (*i.e.*, working for Defendants while not being paid their

full wages) even though the alleged fraud was not directed at them, and even though they did not rely on any fraudulent statements allegedly made by Defendants. Response at 8–9. According to Plaintiffs, their RICO claims should survive dismissal because they were "the direct and intended victims of the fraud," and the connection between the alleged fraud and their injuries is not too attenuated. *Id*. These arguments should be rejected.

As recently explained by the Tenth Circuit in a case where wire fraud was alleged as a predicate RICO act, "[a]lthough reliance is not an explicit element of a civil RICO claim, it frequently serves as a proxy for both legal and factual causation," and "causation is often lacking where plaintiffs cannot prove that they relied on defendants' alleged misconduct." *CGC Holding Co., Ltd. Liab. Co. v. Broad & Cassel*, 773 F.3d 1076, 1089 (10th Cir. 2014). Here, Plaintiffs' Complaint is devoid of any allegation that they relied on any alleged misrepresentations when deciding to work for Defendants and, in fact, they all but concede they ***did not rely*** on any such misrepresentations. Response at 9. Plaintiffs' lack of reliance is, therefore, a strong indication that causation is lacking.

In fact, reviewing the Complaints reveals that there are no allegations sufficient to prove proximate causation. In *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 455 (2006), a RICO case predicated on allegations of mail and wire fraud, the Supreme Court held that a RICO plaintiff cannot circumvent RICO's proximate cause requirement with a conclusory allegation that the defendant intended to harm the plaintiff. *Id*. at 460–61. Instead, a plaintiff needs to allege specific facts showing that mail or wire fraud led ***directly*** to his or her injuries. *Id*.

Here, Plaintiffs argue in their Response that Xclusive's alleged mail and wire fraud led "directly" to their lost wages because (1) in order to pay Plaintiffs less than they were owed, Xclusive and Astley "needed to lie to the USDOL and lie to their clients," (2) the "lies were not designed to harm the USDOL or Xlusive's clients," but rather Xclusive's workers, and thus, (3) "Plaintiffs were the intended victims of the fraud." Response at 3. However, Plaintiffs'

5

argument is not support by citations to any allegations in the Complaint and, in fact, ***none of these allegations appear in the Complaint***. In other words, there are no allegations that Plaintiffs were directly harmed or were "intended" victims. Moreover, Plaintiffs have not alleged that any of Xclusive clients (like Westin) for ***whom Plaintiffs worked*** were "lulled" into doing business with Xclusive because of any alleged fraud, or that any fraud directed at the USDOL led ***directly*** to their failure to receive full wages. In short, Plaintiffs' causation argument is not support by allegations in the Complaint and is far too attenuated to support a civil RICO claim.

  C. <u>Plaintiffs cannot prove the elements of their RICO claims.</u>

    i. *The Complaint does not allege an appropriate enterprise.*

Plaintiffs' First Purported Enterprise is an alleged association-in-fact between Defendant Astley and "Xclusive and all of its associated entities and subsidiaries." Compl. at ¶ 125. Plaintiffs allege Defendant Astley owns Xclusive, established Xclusive's pay practices, was responsible for meeting with the DOL during their previous investigations, and it was Defendant Astley's past representations to the DOL that form the basis for the RICO claim. Accordingly, Defendant Astley is part-of, and not separate-from, Xclusive and Plaintiffs are unable to meet the requirements of an enterprise. *See Bd. of Cty. Comm'rs of San Juan Cty. v. Liberty Grp.*, 965 F.2d 879, 885-86 (10th Cir. 1992); *Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local*, 883 F.2d 132 (D.C. Cir. 1989).

Nearly identical RICO allegations were recently rejected by Magistrate Judge Shaffer in *Llacua v. Western Range Association*, 2016 WL 9735747, *22–23 (D. Colo. 2016). In that case, one of plaintiffs' alleged RICO enterprises, the "Richins Enterprise," consisted of an association-in-fact between "WRA (Western Range Association) and Richins, its former executive director

and president." *Id*. The plaintiffs asserted claims against Richens – *i.e.,* a "RICO person" – alleging that he "was substantially involved in WRA's alleged fraudulent policy of representing to state agencies and the DOL . . . that shepherds would be reimbursed for their expenses and would not have unreasonable fees deducted from wages, knowing that this would not happen." *Id*. Magistrate Judge Shaffer rejected these allegations as insufficient to allege a RICO enterprise because "as a matter of law, a corporation and its officer cannot be a RICO association-in-fact regarding conduct undertaken in the corporation's regular business as an officer of the corporation." *Id.*

Like in *Llacua*, here, Plaintiffs allege a corporate officer (Defendant Astley) was engaged in an enterprise between herself and the corporation-defendants ("Xclusive and all of its associated entities and subsidiaries.") Compl. at ¶ 125. Also like in *Llacua*, here, Plaintiffs claim Astley, in her role as owner of Xclusive, was involved in conduct relating to Xclusive's ordinary business as an officer of Xclusive, including the conduct that underlies Plaintiffs' RICO claim. Thus, Plaintiffs have not alleged sufficient distinctness between Astley and Xclusive and the First Purported Enterprise fails.

Plaintiffs' Response relies on *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001). In that case Cedric Kushner "sued Don King, the president and sole shareholder of Don King Productions, a corporation, claiming that King had conducted the boxing-related affairs of Don King Productions in part through a RICO 'pattern.'" 533 U.S. at 160. Notably, Plaintiffs' counsel made nearly identical arguments in *Llacua* regarding their alleged enterprise as they make here, including relying almost exclusively on *Cedric Kushner*. *See Llacua,* 2016 WL 9735747, at *23. Magistrate Judge Shaffer considered Plaintiffs' counsel's arguments and had

little trouble distinguishing *Cedric Kushner*, stating, "[t]he case is inapposite because it did not involve an overlapping association-in-fact." *Id*. Magistrate Judge Shaffer also said,

> Plaintiffs do not allege that Richins was acting other than in his capacity as executive director of WRA in the regular business of WRA. Plaintiffs also do not allege that Richins took over or influenced WRA so as to obtain an appearance of propriety for job orders or applications, nor to engage in criminal conduct that could not be as easily discovered as if Richins submitted job orders or applications on behalf of only his own ranch.

*Id*. (also noting that "lower courts have declined to extend *Cedric Kushner* beyond its specific factual scenario). Based on these factual distinctions, Magistrate Judge Shaffer held that "because Plaintiffs do not allege any enterprise distinct from the persons alleged to have engaged in them, Counts IV and V fail as a matter of law."[2] *Id.* The same is true here. Plaintiffs do not allege Defendant Astley was acting other than in her capacity as owner of Xclusive in the regular business of Xclusive. Thus, Plaintiffs do not allege an enterprise distinct from Defendant Astley, and the First Purported Enterprise fails.

Plaintiffs' Second Purported Enterprise consists of "Xclusive and all of its associated entities and subsidiaries . . ." Compl. at ¶ 126. Defendant's Motion fully explains why this Second Purported Enterprise cannot support either of Plaintiff's RICO claims, and Plaintiff's Response fails to make any argument to the contrary. *See* Response at 11–12.

The alleged Xclusive Enterprise also fails to support a RICO claim. An association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct and requires evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Internet Archive v. Shell*, 505 F. Supp. 2d 755, 769 (D. Colo. 2007) (internal quotation marks omitted). Thus, in *Airquip, Inc.*

---

[2] Judge Blackburn adopted Magistrate Judge Shaffer's recommendations and found "nothing to support any suggestion that the magistrate judge misstated the relevant law or misapplied it to the factual allegations of the operative complaint." *See* 2016 WL 9735748 (D. Colo. 2016).

*v. HomeAdvisor, Inc.*, 2017 U.S. Dist. LEXIS 422618, *4 (D. Colo. 2017), the court explained that an "association-in-fact enterprise," like the alleged Xclusive Enterprise, "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Here, Plaintiffs have not alleged that Xclusive and its clients acted with a shared purpose. Further, as explained in *HomeAdvisor*, a plaintiff must allege that an enterprise's participants, including its non-defendant participants, took some action in furtherance of the alleged enterprise. *Id*. at 5. *See also Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1354 (11th Cir. 2016) (finding RICO allegations inadequate where plaintiffs failed to allege that other entities in the enterprise "were aware of or participated in [defendant's] alleged misrepresentations"). Plaintiffs do not do so here. Nor do Plaintiffs allege that Xclusive's clients otherwise "involved themselves in the affairs" of the enterprise, that profits from the scheme were shared among entities in the enterprise, or that any clients engaged in any conduct outside their normal business practices. *See United Food & Commercial Workers Unions & Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 854–55 (7th Cir. 2013). In fact, Plaintiffs' Response makes no attempt to identify any allegations that Xclusive's clients had some part in operating or managing the affairs of the purported Xclusive Enterprise. Plaintiffs simply ignore this issue in their Response and, as a result, the Court should hold that the Xclusive Enterprise cannot support a RICO claim.

        ii.     *The Complaint fails to allege a racketeering activity.*

As set forth in Defendants' Motion, in order for Plaintiffs to sustain their RICO claims, they must allege that the mail or wires were used "in furtherance" of a fraudulent scheme. Motion at 14. The Complaint's only mail fraud allegations relate to the "USDOL Scheme." Specifically, the Complaint alleges that "[t]he Astley Enterprise and Xclusive Enterprise used the mail . . . in furtherance of the fraudulent scheme directed toward the DOL by transmitting

fraudulent pay records and checks between Xclusive branches, and Xclusive employees and clients." Compl. at ¶ 144. It also alleges the enterprises used the mail "to send time records to its corporate office," and "to send resulting pay checks back to its branch offices." *Id*. at ¶ 145. However, as explained in Defendants' Motion, mailing or wiring time records and paychecks are not in furtherance of any scheme to withhold wages because those documents reveal (rather than conceal) that employees are not being paid for all time worked. Motion at 14 (citing cases). Plaintiffs fail to address this argument in their Response, effectively conceding it.[3] Plaintiffs, therefore, cannot maintain any RICO claims based on mail fraud.

Plaintiffs' Response also fails to address the fact that: (1) that paychecks cannot constitute misrepresentations as a matter of law; *see* Motion at n.2; and (2) the "Electronic Timekeeping Scheme" and "Faxed Timesheet Scheme" fail to support a RICO claim because sending time records over the wire tends to reveal (rather than conceal) underpayment of wages; *see* Motion at 16. Further, as explained in Defandants' Motion and despite Plaintiffs' assertions to the contrary: (1) the Complaint fails to allege wire or mail fraud with particularity, and (2) statements on Xclusive's website regarding compliance with the law cannot support the "Website Scheme" or allegations of wire fraud because misstatements of law are not actionable as fraud.[4] *See* Motion at 13–16; *See also Polzin*, 2007 U.S. Dist. LEXIS 68221 at *13 (dismissing RICO claim based on alleged mail and wire fraud because plaintiff "makes no allegations whatsoever as to which defendant sent a mailing or made a telephone call. . . .

---

[3] Plaintiffs also fail to adequately explain how transmitting "fraudulent" pay records, checks, and time sheets between Xclusive branches, the corporate office, Xclusive employees, and clients could possibly be "in furtherance" of a scheme to defraud the USDOL. *See* Response at n.14.

[4] In essence, Plaintiffs' assertion that the website statements are fraudulent is nothing more than their opinion that Xclusive violated the law and any statements to the contrary are fraud.

Moreover, plaintiff has failed to illustrate how each of these fifty-five mailings or phone calls furthered the fraudulent scheme"). In short, Plaintiffs fail to adequately allege mail fraud or wire fraud, and their RICO claims should be dismissed.

### III. Plaintiffs Lack Standing to Bring Their Fourth, Fifth, and Eighth Causes of Action on Behalf of Classes Outside of Colorado.

As explained in Defendants' Motion, the Court should dismiss Plaintiffs' fourth, fifth, and eighth causes of action to the extent they are based on the laws of states other than Colorado because Plaintiffs – who have worked for Xclusive only in Colorado – lack standing to assert claims under the laws of any other states. Motion at 16–17. This Court reached the same conclusion in *Valverde*, refusing the plaintiffs' request to defer a standing analysis until after a class is certified. *See Valverde*, Dkt. No. 193 at 14–15. In their Response, Plaintiffs simply state their disagreement with the Court's decision in *Valverde*, and again request that the Court defer a standing analysis until after class certification. Response at 16. In other words, Plaintiffs fail to raise any new arguments to stave off dismissal. The Court should, therefore, dismiss Plaintiffs' fourth, fifth, and eighth causes of action to the extent they are based on the laws of states other than Colorado, just as the Court did in *Valverde*.

### IV. Plaintiffs Fail to State a Claim for "Illegal Deductions" Under Colorado Law.

Plaintiffs allege that Xclusive and Westin made several illegal wage deductions in violation of Colorado's Wage Claim Act, including $3 deductions from each paycheck as a processing fee for providing a paycheck, and other deductions for clothing, name tags, background checks, tools, and equipment. Compl. at ¶¶ 99–103, 235. As explained in Defendants' Motion, the Wage Claim Act permits an employer to make deductions from an employee's pay for goods, services, equipment, and property, as long as there is a written agreement between the employer and employee authorizing the deductions. Motion at 17; Colo. Rev. Stat. § 8-4-105(1)(b) (2017). Plaintiffs' Complaint fails to allege that any $3 deductions were unauthorized and, on the contrary, the Complaint specifically alleges that Xclusive and all

Plaintiffs entered into contracts *permitting* $3 to be deducted from each employees' paycheck. *See* Motion at 18; Compl. at ¶ 99. Accordingly, to the extent Plaintiffs base their seventh cause of action on the $3 deductions, the claim should be dismissed. Motion at 17–18.

Plaintiffs argue, however, that dismissal is improper because Plaintiffs should not be required to disprove the existence of a written agreement authorizing deductions and, instead, the existence of such an agreement should be considered an affirmative defense that Xclusive and Westin should bear the burden of proving. Response at 18–19. This argument misses the mark. Even if the existence of a written agreement authorizing $3 deductions were considered an affirmative defense, the Complaint *specifically alleges* that Xclusive and all Plaintiffs entered into contracts permitting $3 to be deducted from each employees' paycheck. Compl. at ¶ 99. The "affirmative defense" is apparent on the face of the Complaint, and therefore, any claim regarding "illegal deductions" based on $3 deductions may be dismissed. *See Fourth Corner Credit Union v. FRB*, 861 F.3d 1052, 1058 (10th Cir. 2017) ("If the defense appears plainly on the face of the complaint itself, the motion may be disposed of under Rule 12(b)(6).") (*citing Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965)).

Plaintiffs next argue that, even though they have alleged the existence of written agreements authorizing the $3 deductions, the Court should hold that the agreements are ineffective because they do not *specifically spell out* the reasons for the deductions. Response at 17–18 ("A written agreement to deduct $3.00 per pay check with no description of the purpose of the deduction cannot suffice as a written agreement for a 'good or service.'"). There is no requirement in the statute that a payroll deduction agreement contain specific language describing the reason for the deduction. The only requirements are (1) that the agreement be enforceable and (2) that the deduction be for "loans, advances, goods or services, and equipment or property by an employer to an employee." C.R.S. § 8-4-105(1)(b). Indeed, Plaintiffs cite no

12

legal authority for their "specificity argument," which is simply an attempt to add a specificity requirement to the statute where none exists.

Plaintiffs' final argument is that, even if the Complaint alleges the existence of an agreement covering the $3 deductions, and even if there is no specificity requirement, the $3 deduction for providing a paycheck cannot be considered a "service" because Xclusive and Westin have a preexisting legal duty to pay their employees. Response at 18. This argument also misses the point. There are a variety of ways Xclusive and Westin may compensate employees, including via direct deposit, cash, check, or deposit onto debit cards. *See* Colo. Rev. Stat. § 8-4-102. In other words, there is no legal duty to provide employees with a paper check, and providing a paper check is a "service" that may be subject to a deduction agreement.

Plaintiffs' seventh claim should, therefore, be dismissed to the extent that it is based on alleged $3 deductions from each paycheck. The deductions were authorized by employees, as Plaintiffs concede in the Complaint. *See* Compl. at ¶ 99. Indeed, as explained in Defendants' Motion, Plaintiffs' seventh cause of action should be dismissed in its entirety because Plaintiffs fail to allege that additional wage deductions clothing, name tags, background checks, tools, and equipment were unauthorized. *See* Motion at 17–18.

## V.     Plaintiffs' Contract and Quasi-Contract Claims Fail.

Defendants' Motion seeks dismissal of Plaintiffs' breach of contract, breach of implied contract, and unjust enrichment claims to the extent the claims are based on nonpayment of overtime wages. Motion at 19. As the Court held when addressing the same claims in *Valverde*, such claims are preempted by the FLSA. *Valverde*, Dkt. No. 193 at 19–20, 23 (citing cases); *see also Barnett v. Pikes Peak Cmty. Coll. Police Dep't*, 2015 WL 4245822 (D. Colo. 2015) (plaintiffs' breach of contract claims for overtime wages preempted by FLSA). Plaintiffs' Response merely rehashes the same argument rejected by the Court in *Valverde*. *See* Response

13

at 19 (*citing Irigoyen-Morales v. Concreations of Colo., Inc.*, 2016 U.S. Dist. LEXIS 85837 (D. Colo. 2016); *Valverde*, Dkt. No. 91 at 33 (making same argument and citing same case).

Plaintiffs' unjust enrichment claim should, in fact, be dismissed in its entirety because an unjust enrichment claim "cannot be maintained where the parties have reached an agreement between themselves as to the terms upon which compensation will be paid (***absent an allegation that the agreement is invalid or unenforceable*** . . . .)" *Perez* v. *Pinon Mgmt. Inc.*, 2013 WL 1149567, *9 (D. Colo. 2013) (emphasis added). *See also Jorgensen v. Colorado Rural Properties, LLC,* 226 P.3d 1255, 1259 (Colo.App.2010) ("[A] claim for unjust enrichment may not be asserted if there is a valid contract covering the subject matter of the alleged obligation to pay"). Here, Plaintiffs admit they were parties to employment contracts with Xclusive that promised payment of "an hourly wage for all hours worked" and that "incorporate[ed] state and federal wage and hour laws." Compl. at ¶¶ 241–42. Plaintiffs do not allege the contracts are invalid or unenforceable. Plaintiffs' unjust enrichment claims are, therefore, barred by the existence of their alleged employment agreements.

In their Response, Plaintiffs argue their unjust enrichment claims should not be dismissed because they are "pled in the alternative, if the contract claim fails." Response at 19. This argument cannot salvage their claims. In *Perez*, the court dismissed plaintiff's unjust enrichment claim where the plaintiff alleged "a contractual relationship existed between [herself] and Defendants wherein Defendants agreed to pay [her] for all hours worked," ***but failed to allege that the agreement was invalid or unenforceable***. *Perez,* 2013 WL 1149567 at *9. The same result should occur here. *See also EchoStar Satellite, L.L.C. v. Splash Media Partners, L.P.*, 2010 WL 3873282, *8 (D. Colo. 2010) (holding that " '[a]lternative pleading ... does not limit the principle that an express contract precludes an implied contract on the same subject matter' " and the "fact that EchoStar's breach of contract claim may fail does not allow EchoStar to plead

unjust enrichment in the alternative") (*quoting Interbank Investments, LLC v. Eagle River Water & Sanitation Dist.,* 77 P.3d 814, 816 (Colo.App.2003)).

Finally, the Court should also dismiss Plaintiff's promissory estoppel claim, just as it did in the *Valverde* case. Plaintiffs fail to allege facts supporting the second element of their claim – *i.e*., they fail to allege they reasonably and detrimentally relied on a promise made by Xclusive. Motion at 19–20; *Valverde*, Dkt. No. 193, at p. 20. Plaintiffs argue they relied on a promise in their contracts with Xclusive that they would be paid for every hour worked. Response at 20. This allegation appears nowhere in the Complaint, however. Accordingly, the claim should be dismissed.

## **CONCLUSION**

Defendants respectfully request that the Motion be granted in its entirety.

Dated: December 12, 2017.

SHERMAN & HOWARD L.L.C.

*s/ Matthew M. Morrison*
Jonathon M. Watson
Matthew M. Morrison
633 Seventeenth Street, Suite 3000
Denver, CO  80202
Telephone:  (303) 297-2900
Email:  mmorrison@shermanhoward.com
Email:  jwatson@shermanhoward.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on this 12th day of December, 2017, I electronically filed the foregoing **DEFENDANTS' REPLY IN SUPPORT OF MOTION PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6) FOR PARTIAL DISMISSAL OF PLAINTIFFS' CLASS AND COLLECTIVE ACTION COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

>Alexander Hood
>David Seligman
>TOWARDS JUSTICE
>1535 High St., Suite 300
>Denver, CO  80218
>*Attorneys for Plaintiffs*
>alex@towardsjustice.org
>david@towardsjustice.org

*s/ Louisa Boyte*