IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01602-RM-MJW

JOSE TREJO;
MARISOL TREJO;
OBDULIA JULIE CORTES;
VILMA DE JESUS ALVARENGA CARRANZA; and those similarly situated,

Plaintiffs,

v.

XCLUSIVE STAFFING, INC.;
XCLUSIVE MANAGEMENT, LLC D.B.A XCLUSIVE STAFFING;
XCLUSIVE STAFFING OF COLORADO, LLC;
DIANE ASTLEY; and
WESTIN DIA OPERATOR, LLC,

Defendants.

---

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6) FOR
PARTIAL DISMISSAL OF PLAINTIFFS' CLASS AND COLLECTIVE ACTION
COMPLAINT (DOCKET NO. 20)**

---

Michael J. Watanabe
United States Magistrate Judge

This matter is before the Court on Defendants Xclusive Staffing, Inc., Xclusive

Management, LLC d/b/a Xclusive Staffing, Xclusive Staffing of Colorado, LLC

(collectively "Xclusive"), Diane Astley, and Westin DIA Operator, LLC's ("Westin")

(collectively "Defendants") Motion Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for

Partial Dismissal of Plaintiffs' Class and Collective Action Complaint. (Docket No. 20.)

Judge Raymond P. Moore referred the subject motion to the undersigned Magistrate

Judge. (Docket No. 21.) The Court has reviewed the subject motion (Docket No. 20),

Plaintiffs Jose Trejo, Marisol Trejo, Obdulla Jule Cortes, and Vilma De Jesus Alvarenga

Carranza's (collectively, "Plaintiffs") Response (Docket No. 25), and Defendants' Reply. (Docket No. 31.) The Court has taken judicial notice of the Court's file, and considered the applicable Federal Rules of Civil Procedure and case law. The Court now being fully informed makes the following findings of fact, conclusions of law, and recommendation.

## I. BACKGROUND

Xclusive is a staffing agency owned by Defendant Astley. Westin operates a hotel and is an Xclusive client. Plaintiffs are current and former Xclusive employees.

Plaintiffs brought suit against Defendants for unpaid wages under state and federal law related Xclusive's policies of (1) deducting $3.00 from each paycheck as an "administrative charge"; (2) deducting 30 minutes from their employees' time sheets regardless of whether they actually took the 30 minute break; (3) failing to provide compensated ten minute breaks for every four hours worked, as is required by Colorado law; and (4) paying two checks for a single workweek for hours that exceed 40, to avoid paying overtime. *See* Complaint (Docket No. 1 ¶¶ 94-122). Plaintiffs also allege Astley and Xclusive violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") through various schemes, discussed in detail below. (*Id.* ¶¶ 125-68.)

On September 6, 2017, this case was consolidated for the purposes of pretrial discovery with *Valverde v. Xclusive Staffing, Inc*., 16-cv-00671-RM-MJW (D. Colo.) ("*Valverde*"), because the actions involved common questions of law and fact. One day before the consolidation, the Court dismissed several claims asserted by the *Valverde* plaintiffs. *See Valverde* at Docket No. 193. The Court dismissed the *Valverde* plaintiffs' RICO claims because they were precluded by the Fair Labor Standards Act ("FLSA").

2

*Id.* at 9–11. The Court also dismissed claims asserted on behalf of putative class members under the laws of states where the plaintiffs did not work for lack of standing. *Id.* at 22. Finally, the Court dismissed the plaintiffs' promissory estoppel claims, and dismissed their breach of contract, breach of implied contract, and unjust enrichment claims to the extent those claims were based on alleged unpaid overtime. *Id.* at 23.

Defendants argue that Plaintiffs' equivalent claims in the case at bar should likewise be dismissed. First, they contend that Plaintiffs' first and second causes of actions under RICO fail to state a claim for relief. Next, that Plaintiffs' fourth, fifth, and eighth causes of action under the laws of states other than Colorado should be dismissed because Plaintiffs lack standing to assert those claims on behalf of themselves or any proposed Rule 23 class. Third, Defendants maintain that Plaintiffs' promissory estoppel claims should be dismissed because Plaintiffs failed to allege detrimental reliance on any promise, and their contract and implied contract claims should be dismissed to the extent they are based on alleged unpaid overtime. Finally, Defendants argue that the Court should completely dismiss Plaintiffs' unjust enrichment claims, not merely limit them to the extent they are based are unpaid overtime, and that Plaintiffs' claims for "illegal deductions" under Colorado law fail to state a plausible claim for relief.

## II. LEGAL STANDARD

In *Valverde*, Judge Moore set forth the relevant standards to consider when reviewing a motion to dismiss:

### 1. Fed. R. Civ. P. 12(b)(1)

3

Motions to dismiss under Rule 12(b)(1) are, generally, either a facial attack on the complaint's allegations as to the existence of subject matter jurisdiction or a factual attack which goes beyond the allegations and challenges the facts on which subject matter jurisdiction is based. *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). A facial attack challenging the sufficiency of the complaint requires the court to accept the allegations of the complaint as true. *Stuart*, 271 F.3d at 1225; *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) (internal citation omitted).

## 2. Fed. R. Civ. P. 12(b)(6)

In evaluating a motion to dismiss under Rule 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135–36 (10th Cir. 2014); *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010). Conclusory allegations are insufficient. *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009). Instead, in the complaint, the plaintiff must allege a "plausible" entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–556 (2007). A complaint warrants dismissal if it fails "*in toto* to render plaintiffs' entitlement to relief plausible." *Twombly*, 550 U.S. at 569 n.14 (italics in original). "In determining the plausibility of a claim, we look to the elements of the particular cause of action, keeping in mind that the Rule 12(b)(6) standard does not require a plaintiff to set forth a prima facie case for each element." *Safe Street Alliance v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (citation, internal quotation marks, and alteration omitted). The "'burden[, however,] is on the moving party to prove that no legally cognizable claim for relief exists.'" *Hall v. Oliver*, Civil Action No. 15-cv-01949-RBJ-MJW, 2017 WL 1437290, at *4 n.1 (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed.)).

## 3. This Court's Civil Practice Standards

As relevant to the parties' arguments, and in keeping with the standards under Rule 12(b)(6), pursuant to Section IV.M.2.c of Judge Raymond P. Moore's Civil Practice

4

Standards ("Standards"), with respect to motions brought pursuant to Rule 12(b)(6): "For each claim for relief that the movant seeks to have dismissed, the movant shall clearly enumerate each element that movant contends must be alleged, but was not." In response, the respondent must identify those elements which he/she disputes and identify where in the complaint he/she contends contains proper and sufficient factual allegations are contained. Standards at Section IV.M.2.c.

*Valverde*, Docket No. 193, at 6-8.

## III.  ANALYSIS

### a.  RICO

Defendants seek dismissal of Plaintiff's RICO claim for three reasons. First, they argue such claims are precluded by the FLSA, as determined in *Valverde*. Second, they claim that Plaintiffs lack standing bring to a RICO cause of action. Finally, they assert that the allegations in the Complaint are insufficient to state bona fide RICO claims.

### 1. Preclusion

As an initial matter, for the reasons set forth by Judge Moore in *Valverde*, to the extent that Plaintiffs' RICO claims stem from alleged violations of the FLSA, the claims are precluded and should be dismissed. However, Plaintiffs argue that the FLSA does not preclude their RICO claims to the extent they seek damages that are not owed under the FLSA, including damages under state wage-and-hour law. The Court deemed this argument waived in *Valverde* because the plaintiffs had failed to raise it before the undersigned Magistrate Judge. *Valverde*, Docket No. 193, at 3. Plaintiffs maintain that they "do not waive that argument here."

As Judge Moore recognized, Plaintiffs' claims based on violations of state law, e.g., the failure to pay them "straight time," do not fall within the scope of the FLSA. *See id.* at 20 (citing *Eagle v. Freeport-McMoran, Inc*., No. 2:15-CV-00577-MV-SMV, 2016 WL 7494277, at *4 (D.N.M. May 26, 2016)). Therefore, to the extent that Plaintiffs' RICO claims are based on more than conduct which violates the FLSA, they are not precluded.[1] Accordingly, the Court will address whether Plaintiffs have standing to bring their RICO claims; i.e., whether Plaintiffs suffered injuries and, if so, whether Defendants' conduct caused the harm.

### 2. RICO Standing[2]

To prove a RICO violation, a plaintiff must show that the defendant violated the RICO statute, and the plaintiff was injured "by reason of" that violation. 18 U.S.C. §§ 1962 and 1964(c). *See also Marlow v. Allianz Life Ins. Co. of N. Am*.,No. 08–CV–00752–CMA–MJW, 2009 WL 1328636, at *3 (D. Colo. 2009). Thus, "[a] plaintiff has standing to bring a RICO claim only if he was injured in his business or property by reason of the defendant's violation of § 1962." *Deck v. Engineered Laminates*, 349 F.3d 1253, 1257 (10th Cir. 2003). Defendants argue that Plaintiffs have not met either standing requirement.

---

[1] Defendants appear to concede this point, as they argue that only as "to the extent Plaintiffs' RICO claims stem from alleged violations of the FLSA, the claims are precluded by the FLSA and should be dismissed." (Docket Nos. 20 at 5 & 31 at 3.)

[2] As Judge Moore explained, RICO standing used be treated as jurisdictional under Rule 12(b)(1), but the Tenth Circuit recently "properly characterized" what once was called "RICO standing" "as the usual pleading-stage inquiry" which does not implicate subject-matter jurisdiction, and therefore is analyzed under Rule 12(b)(6). *Valverde*, Docket No. 193, at 9 (citing *Safe Street Alliance v. Hickenlooper*, 859 F.3d 865, 887 (10th Cir. 2017)).

## A. Injuries

Plaintiffs allege that their RICO injuries consist, among other things, of "loss of past, current, and prospective wages," and spending "unpaid time working as opposed to pursuing other interests." (Docket No. 1 ¶¶ 195, 202.) Defendants contend that be entitled to these damages, Plaintiffs must first prevail on their various wage claims, and until they do, any damages are speculative. Therefore, Defendants claim that Plaintiffs failed to allege a "concrete and tangible" injury. Plaintiffs, who characterize this issue as one of ripeness, rather than standing, argue that under Defendants' formulation, no RICO claims would ever by ripe in any case where the plaintiff asserts, or could assert, a non-RICO claim for damages.

At the outset, the Court notes there is no heightened pleading standard for RICO claims. *See Street Alliance v. Hickenlooper*, 859 F.3d 865, 885 (10th Cir. 2017). Defendants cite *Ivar v. Elk River Partners, LLC*, 705 F. Supp. 2d 1220 (D. Colo. 2010) for the proposition that a RICO injury to business or property must be "concrete and tangible." However, the Tenth Circuit has explicitly rejected requiring a plaintiff to plead a "concrete financial loss" to maintain a RICO injury, at least as it concerns an injury to property. *Safe Street Alliance,* 859 F.3d at 888. On the other hand, it remains true that a RICO plaintiff cannot recover for speculative future injuries under § 1964(c). *Id.*

With this in mind, the Court finds that Plaintiffs plausibly alleged that they sustained past injuries in the form of unpaid straight time wages. Such claims are not speculative–the alleged injuries have already occurred, even if the amount of resulting damages has yet to be determined. Defendants argue that they "do not suggest a

broad sweeping rule that RICO claims may not be brought in the same action with other claims," but, applying their interpretation of § 1964(c), it is hard to conceive of a scenario where a plaintiff would not be required to exhaust all other civil remedies against a defendant before bringing a RICO claim. For instance, the plaintiffs in *Safe Street Alliance* brought a RICO action against the operators of a neighboring recreational marijuana facility because its noxious emissions interfered with the plaintiffs' use and enjoyment of their property and diminished its value. 859 F.3d at 880-81. Under Defendants' theory, the plaintiffs' injuries would have remained speculative unless and until they brought and prevailed in a nuisance suit against the offending marijuana growers. The Tenth Circuit rejected this narrow reading of the RICO statutes, stating that "whether the Reillys might have pursued separate nuisance claims is irrelevant to whether their § 1964(c) claims are viable." *Id.* at 891. Similarly, the Court will not require more from Plaintiffs than plausible allegations of injury to their business or property. Plaintiffs allege that Defendants' schemes deprived them of their full wages. Thus, their Complaint satisfies RICO's injury requirement.

## B. Causation

Next, Defendants argue that Plaintiffs lack standing to assert their RICO claims because they have not established causation. To establish the causation element of a § 1964(c) claim, "a plaintiff must plausibly plead 'that the defendant's violation not only was a but for cause of his injury, but was the proximate cause as well[.]'" *Street Alliance*, 859 F.3d at 889 (quoting *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008)). The concept of "proximate cause" does not lend itself to "black letter

rules"; rather, "[i]t is a way of labeling generically the judicial tools used to limit a person's responsibility for the consequences of that person's own acts, with a particular emphasis on the demand for some direct relation between the injury asserted and the injurious conduct alleged." *Id.* (quotation marks and citation omitted). "'When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries.'" *Id.* (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006)). A plaintiff is not required to plead that he or she is a victim of the defendant's underlying crime to establish a direct injury, just that his or her business or property has been directly injured as a result of the defendant's § 1962 violation. *Id.* (citing *Bridge*, 553 U.S. at 649-50). However, "a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [is] generally said to stand at too remote a distance to recover." *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268–69 (1992).

Plaintiffs allege that Defendants, through two enterprises (the "Astley Enterprise" and the "Xclusive Enterprise"), have engaged in racketeering activities through the following four wire fraud schemes. (Docket No. 1 ¶ 135.)

1.  The "USDOL Scheme" involves Defendants continuing their illegal pay practices after Defendant Astley promised the United States Department of Labor's Wage and Hour Division's Denver District Office (the "USDOL"), which had performed investigations in 2012 and 2014, that it would comply with applicable laws. (*Id.* ¶¶ 137-149.) Defendants used the mail and wires in furtherance of this fraud by "transmitting fraudulent pay

records and checks between Xclusive branches, and Xclusive employees and clients," and by "continually and repeatedly" making false representations to the USDOL regarding the wage violations. (*Id.* ¶¶ 144-48.)

2. The "Website Scheme" refers to the Astley and Xclusive Enterprises' intentionally false advertisements on Xclusive's website that Xclusive is compliant with labor laws. (*Id.* ¶¶ 150-52.) This false representation serves to recruit workers and clients alike, which allows Defendants to maintain the harmful and illegal pay policies. (*Id.* ¶¶ 153-54.)

3. The "Electronic Timekeeping Scheme" is based on Xclusive's use of online timekeeping platforms to maintain false records regarding employee work hours. (*Id.* ¶¶ 155-162.) This underreporting gave clients "the false impression that Xclusive's workers work less time than they actually work," and allowed Xclusive to either charge clients less or keep money that should have gone to workers. (*Id.* ¶ 162.)

4. Finally, the "Faxed Timesheet Scheme" involved handwritten time sheets typically created by Xclusive supervisors and signed and submitted by the clients via fax. (*Id.* ¶¶ 163-68.) These time sheets contained the same fraudulent information regarding work hours. (*Id.* ¶ 166.)

Defendants argue that even assuming these allegations are true, the schemes only relate to misleading the government and Xclusive's clients, and are insufficient to establish that they were the direct cause of Plaintiffs' lost wages. Defendants state that

"the Complaint is devoid of any allegation that any of Xclusive's clients – or any of the Plaintiffs themselves – relied in any way on any fraudulent or misleading statements made by any of the Defendants, which is reason enough, by itself, to dismiss Plaintiffs' RICO claims." (Docket No. 20 at 8.) However "a person can be injured 'by reason of' a pattern of mail fraud even if he has not relied on any misrepresentations." *Bridge*, 553 U.S. at 649. While "[p]roof that the plaintiff relied on the defendant's misrepresentations may in some cases be sufficient to establish proximate cause, . . . there is no sound reason to conclude that such proof is always necessary." *Id.* at 659. "[T]he fact that proof of reliance is often used to prove an element of the plaintiff's cause of action, such as the element of causation, does not transform reliance into an element of the cause of action." *Id.* (quoting *Anza*, 547 U.S. at 478 (Thomas, J., concurring in part and dissenting in part)). After all, "[u]sing the mail to execute or attempt to execute a scheme to defraud is indictable as mail fraud, and hence a predicate act of racketeering under RICO, even if no one relied on any misrepresentation." *Id.* at 648. Thus, the fact that Plaintiffs do not allege reliance is not fatal to their claims.

However, although Plaintiffs allege that Defendants used misrepresentations to the USDOL and Xclusive's clients to maintain and attract business *while* depriving their workers of fair wages, their Complaint does not plausibly allege that the misrepresentations *caused* the illegal retention of wages. Indeed, the allegations in the Complaint make it clear that the predicate acts allowed Defendants to perpetuate an already on-going scheme. For example, regarding the "USDOL Scheme," the Complaint alleges that "[t]he USDOL relied on Ms. Astley's fraudulent promises regarding the meal

deductions in deciding its dispositions, and Plaintiffs and those similarly situated were harmed because, as a result of the fraud, Xclusive was able to continue its illegal practices." (Docket No. 1 ¶ 143.) Thus, Plaintiffs summarize that "Xclusive misled USDOL so that it could **continue** violating the law without being held accountable." (Docket No. 25 at 15) (emphasis in original). It is true that had Astley had not promised the USDOL that it would abide by the law, and not pointed the finger at her hotel clients, the USDOL **may** have held Xclusive "accountable." However, not only is this necessarily speculative, whatever the form of accountability, it does not necessarily mean that Xclusive's repugnant pay policies, which allegedly occurred both before and during the USDOL investigations, would have stopped. In other words, the offending behavior was not the lying to the USDOL, it was the act of failing to paying Plaintiffs' wages they were entitled to receive. Therefore, while the false statements may have allowed Defendants to facilitate or further Plaintiffs' "original" injury, they were not the acts from which this injury directly flowed. *See DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 524 (E.D.N.Y. 2011).

Similarly, Plaintiffs argue that "Xclusive **knew** it was violating wage-and-hour laws, and yet still told its clients on its website that it took these laws 'extremely seriously,' that it 'exceed[s] industry standards to ensure [its clients'] protection],' and claimed '[f]ull compliance with overtime laws.'" (Docket No. 25 at 16) (quoting Docket No. 1 ¶¶ 151-152) (emphasis in original). Therefore, Plaintiffs conclude that "clients are more likely to contract with Xclusive, allowing Xclusive to **maintain** its illegal pay policies, which **have** harmed Plaintiffs." (Docket No. 1 ¶ 154) (emphasis added). It is

12

obvious from this language that Plaintiffs were harmed by Xclusive's pay policies already in place, regardless of what information it put on its website. Plaintiffs do not, and likely cannot, allege that had the misrepresentations on Xclusive's website were the direct cause of Xclusive's deducting their 30-minute lunch breaks.

The "Electronic Timekeeping Scheme" and "Faxed Timesheet Scheme" suffer from similar problems. Both allege that Xclusive's records consistently report 30-minute breaks that employees did not take, and this harmed Plaintiffs "by giving clients the false impression that Xclusive's workers work less time than they actually work," which allowed Xclusive "to either (1) charge clients less than it would if it truthfully recorded and reported work hours or (2) retain profits that would otherwise flow to employees if it truthfully recorded and reported work hours." However, Plaintiffs injuries do not flow from the fact that Xclusive lied to their clients about the hours they worked; they were directly harmed because Xclusive did not fully compensate them for their time spent working.

Plaintiffs claim that their Complaint alleges that "Xclusive and Astley sought to pay their workers less than legal wages, but to do that they needed to lie to the USDOL and lie to their clients," and that those lies were designed to harm "the intended victims of the fraud" – Xclusive's workers. (Docket No. 25 at 9). As Defendants note, it is debatable whether this allegation is actually contained in the Complaint. Even assuming it is, as stated above, Plaintiffs do not sufficiently establish that Defendants "needed" to lie to clients and the government in order to pay their workers less, given that Xclusive's pay practices existed independent of the alleged predicate acts. Moreover, Plaintiffs have not sufficiently alleged that they were actually the "intended victim" of the

13

schemes. For example, Plaintiffs claim that the "Website Scheme" "serves to reassure current and potential clients who confront the risk of being held jointly and severally liable for Xclusive's wage-and-hour violations." (Docket No. 1 ¶ 153.) Thus, it is equally likely that Xclusive's clients were the "intended victim" of the website and timekeeping schemes, which serves to further interrupt the causal chain between Defendants' misrepresentations and Plaintiffs' injuries.

In short, although Plaintiffs allege that Defendants consistently violated wage-and-hour laws, and Xclusive's employees suffered accordingly, the Court finds that this happened regardless of the representations Xclusive made on its website, to clients, or to the government. "Stated otherwise, defendants' misrepresentations and omissions regarding their failure to fully compensate plaintiffs is not the proximate cause of the ultimate harm to plaintiffs, which instead originates in defendants' underlying failure to properly pay plaintiffs for all hours worked." *DeSilva*, 770 F. Supp. at 525. While the alleged misrepresentations may have indirectly led to Xclusive avoiding fines and obtaining more business, which may have then increased its profits–including those illicitly gained from the alleged wage theft–they can not be considered the proximate cause of Plaintiffs' injuries, as alleged in the Complaint. Accordingly, the Court **RECOMMENDS** that Counts I and II of Plaintiff's Complaint (Docket No. 1) be **DISMISSED WITHOUT PREJUDICE**.

### b. State Law Claims on Behalf of Those Outside of Colorado

In *Valverde*, Judge Moore dismissed without prejudice the plaintiff's class action claims based on laws of states other than Colorado. Docket No. 193 at 15. Here,

Plaintiffs respectfully disagree with the Court's ruling and ask that the standing analysis be deferred until after a class is certified. However, Plaintiffs cite to no new authority nor offer a new argument in support of their position. Accordingly, to the extent the class action claims are based on conduct occurring outside the state of Colorado, the Court **RECOMMENDS** that Counts IV, V, and VIII of Plaintiffs' Complaint (Docket No. 1) be **DISMISSED WITHOUT PREJUDICE** for lack of standing.

### c. Illegal Deductions

In Count VII of Plaintiffs' Complaint, Plaintiffs allege that Defendants' deductions from Plaintiffs' paychecks were illegal under the Colorado Wage Claim Act, Colo. Rev. Stat. §§ 8-4-101 *et seq* ("CWCA"). Under the CWCA, employers may not make deductions from the wages or compensation of an employee except in specific circumstances. The exception at issue here permits deductions for "goods or services, and equipment or property provided by an employer to an employee pursuant to a written agreement between such employer and employee, so long as it is enforceable and not in violation of law." Colo. Rev. Stat. § 8-4-105(1)(b).

Defendants argue that Plaintiffs fail to state a claim for illegal deductions under the CWCA because Plaintiffs do not allege that the deductions were unauthorized, noting specifically that Plaintiffs signed contracts permitting the $3 deductions. Defendants correctly point out that Plaintiffs allege that "[t]he form contract provided by Xclusive to all workers, including Plaintiffs, states that $3 is deducted from every weekly paycheck of every Xclusive employee" as an "administrative charge." (Docket No. 1 ¶ 98.) However, whether that "administrative charge" is for valid "goods or services" is in

dispute. Defendants' blanket statement that the CWCA "permits an employer to make deductions from an employee's pay for goods, services, equipment, and property, as long as there is a written agreement between the employer and employee authorizing the deductions" elides a critical statutory condition: the agreed-upon deduction must be enforceable and not in violation of the law. Defendants argue, without citing any authority, that "there is no legal duty to provide employees with a paper check, and providing a paper check is a 'service' that may be subject to a deduction agreement." As Plaintiffs state, Xclusive has a **legal obligation** to pay wages by negotiable instrument, direct deposit, or pay card. *See* Colo. Rev. Stat. §§ 8-4-102, 103. Thus, characterizing this as a "service" is questionable, and Defendants have not met their burden.

As to other deductions for things like criminal background checks, name tags, kitchen uniforms, and kitchen tools (*see* Docket No. 1 ¶ 100 ), there is no allegation that they were authorized by a written contract, and the exception cited above does not apply.

Accordingly, the Court **RECOMMENDS** that the subject motion (Docket No. 20) be **DENIED** as to Count VII.

### d. Contract and Equity Claims

Plaintiffs assert a claim for breach of contract or, "in the alternative, if the contract fails, for contracts implied in law, including promissory estoppel and unjust enrichment." (Docket No. 1 ¶ 247.) Plaintiffs' contract claim is preempted to the extent it is for unpaid overtime wages or is simply a restatement of their FLSA claim. *See*

*Valverde*, Docket No. 193, at 19; *Barnett v. Pikes Peak Community College Police Dept.*, No. 14-cv-02820-LTB, 2015 WL 4245822, at *5 (D. Colo. July 14, 2015). Plaintiffs contract claim with respect to straight time is not preempted.

In *Valverde*, the Court permitted the plaintiffs to maintain their claim for unjust enrichment to the extent they were based are unpaid straight time. Docket No. 193, at 23. Defendants argue that the unjust enrichment claim here should be dismissed in its entirety. The Court agrees. While Plaintiffs' claim for unjust enrichment may not be entirely preempted by the FLSA, this type of equitable claim "cannot be maintained where the parties have reached an agreement between themselves as to the terms upon which compensation will be paid, absent an allegation that the agreement is invalid or unenforceable[.]" *Perez v. Pinon Mgmt., Inc.*, No. 12-CV-00653-MSK-MEH, 2013 WL 1149567, at *9 (D. Colo. Mar. 19, 2013). Each Plaintiff alleges that he or she entered into employment contracts with Xclusive. (Docket No. 1 ¶¶ 24, 44, 61 and 72.) The Complaint does not allege that these contracts were invalid or unenforceable, and the fact that Plaintiffs' breach of contract claim may fail does not allow them to plead unjust enrichment in the alternative. *See Echostar Satellite, L.L.C. v. Splash Media Partners, L.P.*, No. 07-CV-02611-PAB-BNB, 2010 WL 3873282, at *8 (D. Colo. Sept. 29, 2010). Therefore, Plaintiffs' unjust enrichment claims should be dismissed.

Finally, the *Valverde* plaintiffs' claim for promissory estoppel was dismissed with prejudice because they failed to allege any reliance on any promise. Docket No. 193, at 20. The Complaint at issue also fails to identify any promise made by Xclusive, or any detrimental reliance on the part of Plaintiffs, and should be dismissed.

## IV. RECOMMENDATION

It is hereby **RECOMMENDED** that Defendants Xclusive Staffing, Inc., Xclusive

Management, LLC d/b/a Xclusive Staffing, Xclusive Staffing of Colorado, LLC, Diane

Astley, and Westin DIA Operator, LLC's Motion Pursuant to Fed. R. Civ. P. 12(b)(1) and

12(b)(6) for Partial Dismissal of Plaintiffs' Class and Collective Action Complaint

(Docket No. 20) be **GRANTED** in part and **DENIED** part as follows:

- COUNT I:

  - **GRANTED** and the claim be dismissed without prejudice;

- COUNT II:

  - **GRANTED** and the claim be dismissed without prejudice;

- COUNT IV:

  - **GRANTED** to the extent the class action claims are based on
    conduct occurring outside of Colorado, and the claim be dismissed
    without prejudice on this basis;

  - **DENIED** as to the remaining allegations;

- COUNT V:

  - **GRANTED** to the extent the class action claims are based on
    conduct occurring outside of Colorado, and the claim be dismissed
    without prejudice on this basis;

  - **DENIED** as to the remaining allegations;

- COUNT VII:

  - **DENIED**;

18

- COUNT VIII:

  - **GRANTED** to the extent the class action claims are based on conduct occurring outside of Colorado, and the claim be dismissed without prejudice on this basis;

  - **GRANTED** as to Plaintiffs' breach implied contract to the extent it are based on unpaid overtime, and the claim be dismissed with prejudice;

  - **GRANTED** as to Plaintiffs' unjust enrichment claim, and the claim be dismissed with prejudice;

  - **DENIED** as to Plaintiffs' breach of contract and breach of implied contract claims to the extent they are based on unpaid straight time; and

  - **GRANTED** as to Plaintiffs' claim based on promissory estoppel, and the claim be dismissed with prejudice.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148-53**

**(1985), and also waives appellate review of both factual and legal questions,**

***Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999);  *Talley v. Hesse*,**

**91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated:        May 16, 2018                        */s/ Michael J. Watanabe*
              Denver, Colorado                        Michael J. Watanabe
                                      United States Magistrate Judge