**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 17-cv-01602-RM-MJW

JOSE TREJO *ET AL.*,

      Plaintiffs,

v.

XCLUSIVE STAFFING, INC. *ET AL.,*

      Defendants.

---

**PLAINTIFFS' OBJECTION TO REPORT AND RECOMMENDATION ON DEFENDANTS'
MOTION PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6) FOR PARTIAL
DISMISSAL OF PLAINTIFFS' CLASS AND COLLECTIVE ACTION
COMPLAINT [ECF DOC. 45]**

---

## I.  INTRODUCTION

This case is about Defendants' alleged practice of stealing wages from Plaintiffs and other

similarly situated employees. Along with claims under state and federal wage-and-hour laws, Plaintiffs

have also asserted claims under the RICO Act, 18 U.S.C. § 1962(c), based (1) on some Defendants'[1]

fraudulent misrepresentations to the United States Department of Labor ("USDOL") and to Xclusive's[2]

clients that Xclusive complies with wage-and-hour requirements and (2) on those Defendants'

fraudulently underreporting the number of hours that employees work each week to Xclusive's clients.

Typical wage-and-hour cases do not also involve violations of the RICO Act. But this is **not** a

---

[1] Plaintiffs' assert their RICO claims against Xclusive Staffing, Inc. and Diane Astley, Xclusive's owner.
[2] "Xclusive" is composed of Defendants Xclusive Staffing, Inc., Xclusive Management, LLC, and Xclusive Staffing of Colorado, LLC.

typical wage-and-hour case. *See* ECF Doc. 32-1 at 1-2 (surreply discussing unique circumstances here justifying RICO claims); *Jeter v. Wild W. Gas, LLC*, 2015 WL 5970992, at *13 (N.D. Okla. Oct. 14, 2015) ("The Court rejects the argument that causation is lacking because the RICO allegations are merely 'repackaged' contract claims.… In this case … Plaintiffs allegations go beyond a mere breach of contract.").

Xclusive is a staffing company whose sole product is the cheap labor it provides for clients like hotels that have offloaded many of their core functions to staffing companies to reduce labor costs. The staffing company business model depends on staffing company clients being assured that their staffing companies are reducing their labor costs without also subjecting those clients to potential litigation risk for wage-and-hour violations. In this case, Xclusive gained a competitive advantage in the staffing agency market through its repeated and emphatic assurances that it complies with the law along with its transmission of weekly timesheets reflecting that its workers were completing their work for clients while also receiving 30-minute meal breaks for every shift. ECF Doc. 1 at ¶¶ 125-68 ("Compl."). Xclusive knew that that these representations were false, but it transmitted them to maintain a business model that allowed it to continue placing its employees with clients while also stealing wages from those employees' paychecks.

In the Report and Recommendation of May 16, 2018, ECF Doc. 45 ("R&R"), the Magistrate Judge agreed with Plaintiffs that their RICO claims were not precluded by the Fair Labor Standards Act ("FLSA") and that Plaintiffs had plausibly alleged injury to "business or property" under the RICO Act. R&R at 4-8. The Magistrate Judge nonetheless recommended that the Court grant Defendants' Motion to Dismiss Plaintiffs' RICO claims based on his conclusion that Plaintiffs had not plausibly pleaded that their injuries were caused by the alleged pattern of racketeering. *Id.* at 8-14. The R&R also recommends

dismissal of other claims on a variety of bases. *Id.* at 14-20. All of the recommendations for dismissal are in error and the Court should decline to adopt the R&R.

## II.   STANDARD OF REVIEW

The R&R addresses a dispositive motion and is thus reviewed *de novo*. Fed. R. Civ. P. 72(b).

## III.   DISCUSSION

### A.   Defendants' Failure to Confer

The R&R seemingly ignores Plaintiffs claim that Defendants failed to confer pursuant to the local rules and this Court's practice standards before filing this motion. *See* ECF Docs. 25 at 2 n. 4 (response citing D.C.COLO.LCivR 7.1(a) and Practice Standard IV.M.2.a), 25-1 (purported conferral). To the extent that the Court finds that dismissal of some claims is necessary because of technical pleading deficiencies, Plaintiffs should be given leave to amend to correct those deficiencies, as Defendants effectively robbed them of that opportunity by ignoring Practice Standard IV.M.2.a. Plaintiffs also recognize that the R&R's recommendation to dismiss most claims **without prejudice** could be, and rightly should be, based on this failure by Defendants. *See* R&R at 18-19 (recommending dismissal without prejudice for most claims where dismissal is recommended).

### B.   RICO Causation

The R&R considered Plaintiffs' RICO claims and recommended dismissal of Plaintiffs' RICO claims for insufficiently pleading that the alleged racketeering proximately caused the alleged harm. R&R at 8-14.

#### 1.   Plaintiffs' Causation Allegations

In their Complaint, Plaintiffs' allege that Defendants engaged in a pattern of racketeering consisting of mail and wire fraud. Compl. ¶¶ 193, 200, and that these racketeering activities "**caused** Plaintiffs and those similarly situated to suffer loss of past, current, and prospective wages and to spend

unpaid time working as opposed to pursuing other interests." Compl. ¶¶ 195, 202 (alleging the same harm for the two alleged enterprises).

The alleged racketeering activities consisted of the following, which separately and together constituted racketeering activities, Compl. 136:

- **The USDOL Scheme:** Fraudulent statements to the USDOL regarding ongoing violations of wage and hour laws during enforcement actions. Compl. ¶¶ 137-49.

- **The Website Scheme:** Fraudulent statements to its current and potential clients regarding its compliance with wage-and-hour laws. Compl. ¶¶ 150-54.

- **The Electronic Timekeeping Scheme:** Fraudulent statements to its current customers regarding hours worked by employees at customer locations. Compl. ¶¶ 155-62.

- **The Faxed Timesheet Scheme**: Faxing timesheets reflecting underreported hours from client locations to the corporate office to facilitate passing the savings from its wage and hour violations on to its clients. Compl. ¶¶ 163-68.

Plaintiffs further alleged that Defendants engaged in this racketeering activity with the purpose of maintaining and attracting business—*i.e.*, clients where their employees could work—while knowingly illegally underpaying their employees. Compl. ¶¶ 129, 133.

## 2. The Supreme Court's Proximate Cause Framework

In the motion practice surrounding Defendants' motion to dismiss, the parties largely agreed on the applicable law, while—unsurprisingly—disagreeing on the outcome. *See* ECF Docs. 20 at 8-9 (motion), 25 at 8-10 (response), 31 at 4-6 (reply). In short, as laid out by the Supreme Court in its case law addressing RICO proximate cause, the relevant inquiry is whether the racketeering activity is the "direct" cause of the alleged harm. *See Hemi Group, LLC v. City of New York*, 559 U.S. 1, 10 (2010)

(discussing "RICO's direct relationship requirement")**;** *Phoenix Bond & Indemnity Co. v. Bridge*, 553 U.S. 639, 654-55 (2008) (describing same); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."); *Holmes v. Sec. Inv'r Prot. Corp.,* 503 U.S. 258, 268 (1992).

In considering whether a harm is "directly" caused by a racketeering activity, the touchstone of the Supreme Court's analysis is the prudential consideration of whether there are other Plaintiffs better situated to sue for the same harm. *Hemi.*, 559 U.S. at 11-12 ("One consideration we have highlighted as relevant to the RICO "direct relationship" requirement is whether better situated plaintiffs would have an incentive to sue.") (citing *Holmes*, 503 U.S. at 269-270). Put another way, if a plaintiff is the only person harmed by the racketeering activity, she is "directly" harmed because there is no plaintiff better situated to sue. *See Bridge*, 553 U.S. at 658 ("[N]o more immediate victim is better situated to sue. Indeed, both the District Court and the Court of Appeals concluded that respondents and other losing bidders **were the only parties injured by petitioners' misrepresentations**." (emphasis added)).

This focus on the existence of other parties better suited to sue makes sense when one considers the policy behind proximate causation in the RICO context. Proximate cause is not an arbitrary line in the sand, allowing liability on one side and foreclosing it on the other. Rather, it serves a flexible prudential purpose for the courts, avoiding the morass of apportioning damages between different parties along the causal chain harmed in different amounts, while still ensuring the public policy benefit of private parties suing as private attorneys general. As the Supreme Court noted in *Bridge*,

> The direct-relation requirement avoids the difficulties associated with attempting to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent factors; prevents courts from having to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the

> violative acts, to obviate the risk of multiple recoveries; and recognizes the fact that
> directly injured victims can generally be counted on to vindicate the law as private
> attorneys general, without any of the problems attendant upon suits by plaintiffs injured
> more remotely.

553 U.S. at 654 (internal quotations omitted).

Magistrate Shaffer recently applied the "direct relationship test" to find RICO proximate cause

in *Llacua v. W. Range Ass'n,* 2016 WL 7405468, at \*16 (D. Colo. Dec. 21, 2016). *See also* ECF Doc.

25 at 9-10 (response citing and quoting *Llacua*). There, Magistrate Shaffer considered alleged fraudulent

statements to the USDOL by sheep ranches that they were reimbursing their shepherds (who were

foreigners working in the United States on H-2A visas) for costs associated with recruitment and travel

to the United States. The plaintiff shepherds claimed they were harmed by not being reimbursed and that

the lack of reimbursement was proximately caused by the fraudulent statements to the USDOL. In

finding causation, Magistrate Shaffer looked to *Bridge* and agreed with the plaintiffs:

> **The only limitation on this principle is that the victim's injury must "not [be]
> derivative of someone else's."** *Phoenix Bond & Indem. Co. v. Bridge,* 477 F.3d 928,
> 932 (7th Cir. 2007), *aff'd, Bridge,* 553 U.S. 639. *See also CGC Holding Co., LLC v.
> Broad & Cassel,* 773 F.3d 1076, 1088-89 (10th Cir. 2014) ("[D]espite its usefulness as
> a stand-in for causation, strict first-party reliance is not a prerequisite to establishing a
> RICO violation"). **Giving the [complaint] reasonable inferences, Plaintiffs allege that
> WRA's scheme of false certifications injured no one but Plaintiffs.**

*Llacua,,* 2016 WL 7405468, at \*16 (emphasis added); *see* ECF Docs. 25 at 10 (response, elaborating on

*Llacua*), 32-1 at 3 (surreply, differentiating between the two *Llacua* decisions).[3]

Here, as alleged and giving Plaintiffs allegations all reasonable inferences, Plaintiffs and those

similarly situated were **the only persons** harmed by the alleged racketeering. This is unlike *Hemi* (where

the city not the plaintiffs were directly harmed), unlike *Anza* (where the state and not the plaintiffs were

---

[3] The motion for leave to file a surreply was granted. *See* ECF Doc. 44.

directly harmed), and more like *Bridge* (where fraud to the county harmed **only** the other participants in the lien auction). The USDOL is not harmed by the alleged USDOL scheme. Nor are Xclusive's clients harmed by the Website Scheme, the Electronic Timekeeping Scheme, or the Faxed Timesheet Scheme. Indeed, Xclusive's clients benefit—though perhaps unwittingly—from these schemes by paying less for more work.[4]

The only persons harmed by this mail and wire fraud are Plaintiffs and those similarly situated, that is enough for the "direct relationship test" and therefore that is enough for RICO proximate cause. *See* ECF Doc. 25 at 8-10 (response arguing same).

### 3.  The R&R's Improper Reliance on *DeSilva*

In recommending dismissal of the RICO claims for failure to allege proximate cause, the R&R largely ignores the direct relationship test established by the Supreme Court in *Hemi, Bridge, Anza,* and *Holmes* and instead relies largely on *DeSilva v. N. Shore-Long Island Jewish*, 770 F. Supp. 2d 497, 524 (E.D.N.Y. 2011), a case that Defendants do not cite in arguing that Plaintiffs' RICO claims should be dismissed on causation grounds.[5]

*DeSilva* concerns the mailing of fraudulent paychecks reflecting less wages than plaintiffs were legally entitled to receive. The *DeSilva* court found the paychecks did not cause harm in the form of

---

[4] Perhaps the clients could claim that they are harmed by liability resulting from suits like this one claiming they are joint employer jointly liable for unpaid wages. *See* R&R at 14 ("Thus, it is equally likely that Xclusive's clients were the "intended victim" of the website and timekeeping schemes, which serves to further interrupt the causal chain between Defendants' misrepresentations and Plaintiffs' injuries."). But, contrary to the R&R's reasoning, there it would be the customers with a proximate cause problem: the racketeering activity harms the employees who, in turn, sue the customers. The parties who are directly harmed by the racketeering activity remains the Plaintiffs.

[5] *DeSilva* was cited in the motion to dismiss for the proposition that Plaintiffs' claims are precluded by the FLSA. ECF Doc. 20 at 5. The Court rejected that argument in the R&R at 5-6.

underpayment because the paychecks were not an "indispensable" part of the alleged scheme to underpay the workers. 770 F. Supp. 2d at 525. Though unclear, this "indispensable" standard could be a misapplication of "but for" causation, which, as with torts, must accompany proximate cause. But proximate cause is a limitation on "but for" causation, decreasing the availability of a remedy to a subsection of those who suffered "but for" a defendant's conduct. *See Holmes*, 503 U.S. 267-70 (discussing the expansiveness of "but for" causation and proximate cause as a prudential limitation on "but for" causation). It is therefore a legal impossibility to have proximate causation without "but for" causation. As such, it makes little sense to apply tests like this one in addition to the Supreme Court's proximate cause test: the direct relationship test. Regardless, Plaintiffs have alleged "but for" causation. Compl. ¶¶ 195, 202 (alleging the racketeering activity caused the harm).

Further, a Tenth Circuit case from the Northern District of Oklahoma, *Jeter v. Wild West Gas, LLC*, contained remarkably similar facts to *DeSilva*, but found proximate cause and let RICO claims proceed past a motion to dismiss. *See* 2015 WL 5970992, at * 12-14. There, plaintiffs with interests in natural gas wells and rights to royalties from those wells sued the lessees operating the wells for making illegal deductions from their royalties and because defendants "misrepresented and/or concealed the deductions in the royalty remittance statements sent to Plaintiffs." *Id.* at * 3. Plaintiffs alleged that the mailing of the fraudulent remittance statements constituted mail fraud and that the multiple instances of this mail fraud constituted a racketeering activity that proximately caused plaintiffs harm in the form of illegal underpayment of royalties. *Id.* at *12. Relying on Second Circuit precedent, Defendants made an argument similar to that adopted by the R&R: that the harm would have happened with or without the racketeering activity. *Id.* at *13 ("Defendants contend that the alleged financial losses would have occurred with or without the accompanying mailings.").

But the court in *Jeter* rejected this argument, found that the Second Circuit law had not been adopted by the Tenth Circuit, and refused to follow it because it was detached from Supreme Court's RICO proximate cause jurisprudence:

> The Court rejects this causation argument … for two reasons. First, the Court is unaware of Supreme Court or Tenth Circuit law applying these two 'causation' terms in the RICO context. In 2010, the Supreme Court explained RICO's causation requirements without mentioning these terms or any similar requirements. *See Hemi Group*, 559 U.S. at 9-12. Second, while the fraudulent mailings did not induce Plaintiffs to enter the original leases, they could plausibly be deemed a proximate cause of their economic injuries. The remittance statements were Defendants' only communications with Plaintiffs as to amounts owed. If indeed fraudulent in some manner, they potentially lulled Plaintiffs into believing no deductions were being taken. **Making a false representation on paper in furtherance of a scheme to defraud falls under the gambit of mail fraud, even if the fraudulent scheme was also occurring separate and apart from the mailing.** *Suessenbach Family Ltd. P'ship v. Access Midstream Partners, L.P.*, 2015 WL 1470863, at *12 (M.D. Pa. Mar. 31, 2015) (denying motion to dismiss RICO claim and rejecting identical causation argument made by the defendant, which had allegedly mailed fraudulent royalty statements).

*Id.*.

The fraudulent remittance statements in *Jeter* are directly analogous to the fraudulent paychecks in *DeSilva*. Instead of dismissing, the Court rejected the out-of-circuit caselaw and properly applied the "direct relationship test" outlined by the Supreme Court. *See id*. This Court should do the same.

Moreover, the facts here are distinguishable from *DeSilva*. Thus, even if *DeSilva's* "indispensable" test were somehow the law, Plaintiffs have satisfied that test. Unlike in *DeSilva*, here the alleged racketeering activity is not merely the mailing of paychecks reflecting illegally low wages. Rather, Plaintiffs claim that the alleged enterprises' businesses rely on fraudulent communications to the USDOL and customers to gain a competitive advantage, while paying their employees illegally low rates. Compl. ¶¶ 129, 133. The fraud is therefore an "indispensable" part of the scheme.

The R&R's application of *DeSilva* to the facts in this case also makes little sense. The R&R

summarizes its reasoning based on *DeSilva* as, "Plaintiffs injuries do not flow from the fact that Xclusive lied to their clients about the hours they worked; they were directly harmed because Xclusive did not fully compensate them for their time spent working." R&R at 12-13. That is, there is not proximate cause because the illegally low wages were proximately caused by Defendants paying illegally low wages, not because of the alleged fraud.

But this formulation—that the identification of a separate proximate cause from that alleged warrants dismissal—would vitiate causation in almost any RICO claim. Consider *Bridge*: The Supreme Court could have concluded that the harm was caused by the defendant violating the single-party bidder rule, not by the defendant's fraud to the County. Consider *Llacua*: Magistrate Shaffer could have concluded the failure to reimburse the plaintiffs was caused by the ranches not reimbursing, not by the fraud to the USDOL. And consider *Jeter*: The court could have concluded the harm was caused by the lessees illegally deducting royalties, not by the fraudulent remittance statements mailed to the plaintiffs. The availability of this framing was not fatal to the claims in *Bridge, Llacua*, or *Jeter,* and it should not be fatal here.

After all, no one would dispute that **one cause** of the harm in almost any RICO case is a defendant's decision to undertake activities that would harm plaintiffs. But **another cause** of the harm can also be the racketeering fraud that allowed and perpetuated those activities. *See Schmuck v. United States,* 489 U.S. 705, 711-14 (1989) (concluding that mailings designed to preserve "[defendant's] relationship of trust and goodwill with the retail dealers upon whose unwitting cooperation his scheme depended" fall within the ambit of the mail fraud statute). And it is black letter law that there can be multiple proximate causes to a single harm. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 704 (2004) ("a given proximate cause need not be, and frequently is not, the exclusive proximate cause of harm") (citing

10

57A Am. Jur. 2d § 529 (2004)); *see also Dinkens v. Creative Bus. Sols., LLC*, No. 13-2158-RDR, 2013

U.S. Dist. LEXIS 125898, at *8-9 (D. Kan. Sep. 4, 2013) (quoting *Hemi*, 559 U.S. at 2).

Finally, without citation, the R&R finds relevance in the fact that "Plaintiffs have not sufficiently

alleged that they were actually the 'intended victim' of the schemes." R&R at 13-14. First, it is not at all

apparent why alleging Plaintiffs were "intended victims" of the racketeering is a legal requirement to

show proximate cause. To the extent the R&R considers it relevant to foreseeability, that is a legal error.

Unlike tort, RICO proximate cause focuses, again, on whether there is a direct relationship between the

racketeering activity and the harm, not on foreseeability. *See Hemi*, 559 U.S. at 12 ("The concepts of

direct relationship and foreseeability are of course two of the many shapes proximate cause took at

common law. Our precedents make clear that in the RICO context, the focus is on the directness of the

relationship between the conduct and the harm. Indeed, *Anza* and *Holmes* never even mention the concept

of foreseeability." (quotations omitted and emphasis added)); *Jeter,* 2015 WL 5970992, at * 12 ("In

deciding the issue of causation, the focus is on the directness of the relationship between the conduct and

the harm, and not on the foreseeability of the injury." (citation and quotation omitted))

Putting the legal necessity of the allegation aside, the R&R makes a legal error in finding that

Plaintiffs did not adequately plead that they were the intended victims of the racketeering. The R&R

states, "**it is equally likely** that Xclusive's clients were the 'intended victim' of the website and

timekeeping schemes, which serves to further interrupt the causal chain between Defendants'

misrepresentations and Plaintiffs' injuries." R&R at 14 (emphasis added). But factual allegations leading

to two plausible outcomes – one supporting a claim and one not – should not lead to dismissal at this

stage. *See Gelboim v. Bank of Am. Corp.,* 823 F.3d 759, 782 (2d Cir. 2016), cert. denied, 137 S. Ct. 814,

196 L. Ed. 2d 599 (2017) ("[A]t the motion-to-dismiss stage, appellants must only put forth sufficient

factual matter to plausibly suggest an inference of conspiracy, even if the facts are susceptible to an equally likely interpretation."); *In re Domestic Airline Travel Antitrust Litig.*, 221 F. Supp. 3d 46, 69 (D.D.C. 2016) ("At the motion to dismiss stage, courts should not weigh Plaintiffs' reasonable interpretation of factual allegations against Defendants' alternative interpretation." (quotations omitted)). It is enough that one of the "equally likely" interpretations of Plaintiffs' complaint is that they were the intended victims of the scheme.

## C.   Defendants' Remaining Arguments to Dismiss the RICO Claims Also Fail

As the R&R dismissed Plaintiffs' RICO claims on causation, it did not consider several of the other arguments made by Defendants. The R&R rightly found that Plaintiffs claims are not precluded by the FLSA and that Plaintiffs allege a tangible RICO injury. *See* R&R at 5-8. Defendants also argued that neither of the enterprises alleged by Plaintiffs is sufficiently distinct. For the reasons outlined in the Response, they are. ECF Docs. 25 at 10-14 (response). Moreover, Plaintiffs allegations of mail and wire fraud are sufficient to satisfy Rule 9. ECF Doc 25 at 14-15. But even if they are deficient in this regard, Defendants should have conferred before filing the motion, as the Court's practice standards were designed with this issue particularly in mind. *See supra* at 3 (describing failure to confer); Practice Standard IV.M.2.a. ("Counsel should confer prior to the filing of the motion to determine whether the deficiency can be corrected by amendment (**e.g., failure to plead fraud with specificity**) and should exercise their best efforts to stipulate to appropriate amendments." (emphasis added)). The remainder of Defendants' arguments for dismissal of the RICO claims deserve little attention by the Court and are dealt with succinctly in Plaintiffs' response and surreply. *See* ECF Docs. 25 at 15-16 (response), 32-1 at 1-4 (surreply).

**D.   The R&R Errs in Dismissing Multi-State Class Action Claims for Lack of Standing**

The R&R makes an error of law in dismissing class action state law claims on behalf of those

outside of Colorado. R&R at 14-15.[6] Courts have framed this question as turning on whether class

certification is "logically antecedent" to the question of Plaintiffs' standing to assert claims. *Smith v. Pizza*

*Hut, Inc.*, 2011 WL 2791331 (D. Colo. July 14, 2011). Here, the Court should defer the standing analysis

until after a class is certified and deny the Motion as to this point. Unless and until the class is certified,

these claims are merely "conjectural." *Kuhl v. Guitar Ctr. Stores, Inc.*, 2008 WL 656049, at *3 (N.D. Ill.

Mar. 5, 2008).

Dismissing putative class claims for lack of standing in contexts like this "would . . . impose a

requirement that, in a multistate class action involving state . . . law claims, there be a named plaintiff

from every state." *Wilson v. EverBank*, N.A., 77 F. Supp. 3d 1202, 1231 (S.D. Fla. 2015). That result

would be inconsistent with "established practice," and "highly inefficient." *Id.*; *see also In re DDAVP*

*Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 213 (S.D.N.Y. 2012) (collecting cases and

deciding to "join the courts in [the] growing consensus [to] find that class certification is logically

antecedent to the issue of standing" in cases where the named plaintiff seeks to represent class members

asserting claims under the laws of states where the named plaintiff does not reside or work).

**E.   The R&R Errs in Dismissing the Equitable Claims**

The R&R errs in dismissing all equitable claims that seek unpaid overtime as preempted by the

FLSA. R&R at 16. Courts in this district have found that the FLSA-owed wages can be pursued under

---

[6] Plaintiffs recognize that the Court in *Valverde* dismissed similar claims for this reason, but the Tenth
Circuit has not ruled on the issue, district courts are split on the issue, and Plaintiffs' respectfully disagree
with the Court's decision on this point in *Valverde.*

state law. *Irigoyen-Morales v. Concreations of Colo., Inc.,* 2016 U.S. Dist. LEXIS 85837 (D. Colo. June 30, 2016).[7]

The R&R also errs in dismissing Plaintiffs' unjust enrichment claim because of the existence of a contract. R&R at 17. The equitable claims are clearly plead in the alternative, if the contract fails. The federal rules expressly contemplate this mechanism for pleading claims. Compl. ¶ 247 ("In the alternative, if the contracts fail…."); Fed. R. Civ. P.  8(a)(3) (A claim for relief "may include **relief in the alternative** ….") (emphasis added). Moreover, the R&R's reliance on *Perez v. Pinon Mgmt., Inc.* is No. 12-CV-00653-MSK-MEH, 2013 WL 1149567, at *9 (D. Colo. Mar. 19, 2013) is misplaced. R&R at 17. While the parties may agree on the existence of an employment contract of some shape and form, there has been no stipulation as to the exact terms and bounds of that contract. Absent agreement as to the scope of the contract, Plaintiffs should be entitled to pursue equitable claims in the alternative until more factfinding has been done. *See Robert W. Thomas & Anne McDonald Thomas Revocable Trust v. Inland Pac. Colorado, LLC*, No. 11-CV-03333-WYD-KLM, 2012 WL 2190852, at *4 (D. Colo. June 14, 2012) ("I find that the Trust may plead unjust enrichment in the alternative to the breach of contract claim at this stage of the litigation, but will have to choose which claim to pursue at a later date.").

Finally, the R&R mistakenly dismissed Plaintiffs' promissory estoppel claim for failing to allege reliance. But, as to each Plaintiff, the Complaint alleges that a material term of their employment was being paid for every hour work. Compl. ¶¶ 24, 44, 61, 72, 241. Plaintiffs thus relied on the term in continuing performance under what they thought was a contract. If the contract were to fail, that reliance

---

[7] Plaintiffs recognize that the Court did not agree with this argument in *Valverde* and, respectfully, restate it here for preservation purposes. *See Valverde v. Xclusive Staffing, Inc.,* 16-cv-00671-RM-MJW, ECF Doc. 193 at 19 (D. Colo. Sept. 5, 2017).

would suffice for promissory estoppel. If the Court were to agree with Defendants that the Complaint

lacks a short allegation alleging reliance, Defendants should have conferred regarding this deficiency and

Plaintiffs should be permitted to amend to cure it. *See supra* at 3.

## IV.   CONCLUSION

For the forgoing reasons, the Court should decline to adopt the R&R.


Respectfully Submitted,

s/Alexander Hood
Alexander Hood
David H. Seligman
Towards Justice
1410 High St., Suite 300
Denver, CO 80218
Tel.: 720-239-2606
Fax: 303-957-2289
Email: alex@towardsjustice.org

Attorneys for Plaintiffs

**Certificate of Service**

I hereby certify that on May 30, 2018 I served a true and correct copy of the forgoing on all parties that have appeared pursuant to Fed. R. Civ. P. 5.


s/Alexander Hood
Alexander Hood