**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:17-cv-01602-RM-MJW

JOSE TREJO, *et al.*; and those similarly situated,

        Plaintiffs,

  v.

XCLUSIVE STAFFING, INC.; *et al.*,

        Defendants.

---

**DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON MOTION FOR PARTIAL DISMISSAL**

---

Defendants Xclusive Staffing, Inc. ("Xclusive"); Xclusive Management, LLC d/b/a Xclusive Staffing; Xclusive Staffing of Colorado, LLC; Diane Astley; and Westin DIA Operator, LLC ("Westin"), hereinafter referred to collectively as "Defendants," submit the following Response to Plaintiffs' Objections (Dkt. No. 52, "Objections") to Magistrate Judge Watanabe's Report and Recommendation on Defendants' Motion for Partial Dismissal of Plaintiffs' Complaint (Dkt. No. 45, "Recommendation").

## PROCEDURAL HISTORY

This case has been consolidated for purposes of pretrial discovery with *Valverde v. Xclusive Staffing, Inc.,* 16-cv-00671-RM-MJW (D. Colo.) ("*Valverde*"), a case that shares several Defendants with this matter. Plaintiffs' counsel in this case also represents the plaintiffs in *Valverde*. On September 5, 2017, the Court dismissed a number of the plaintiffs' claims in *Valverde*, and now the only remaining claims in that case are: (1) Count II – an overtime claim

under the Fair Labor Standards Act ("FLSA"); (2) Count III – claims under the Colorado Wage Claim Act ("CWCA") for unpaid "straight time" and unpaid overtime; (3) Count IV – a Colorado state law claim for failing to provide 10-minute rest breaks;[1] (4) Count V – a CWCA claim for allegedly improper deductions; and (5) Count VI - breach of implied contract and unjust enrichment claims to the extent they are based on unpaid straight time. *Valverde*, Order (Dkt. No. 193).

Rather than opt-in to the *Valverde* case, on June 30, 2017, Plaintiffs filed a Complaint in this matter alleging nearly identical claims as those in *Valverde*. Plaintiffs' claims include: (1) Counts I and II – civil claims under the Racketeer Influenced and Corrupt Organizations ("RICO") Act – which were dismissed in the *Valverde* action; (2) Count III – an FLSA overtime claim; (3) Count IV – claims for "statutorily required wages" under the CWCA and the laws of New Mexico, Kansas, Louisiana, Indiana, Kentucky, Ohio, Hawaii, and Florida; (4) Count V – overtime claims under the CWCA and the laws of New Mexico, Kansas, Louisiana, Indiana, Kentucky, Ohio, Hawaii, and Florida; (5) Count VI – a Colorado state law claim for failing to provide 10-minute rest breaks; (6) Count VII – an illegal deduction claim under Colorado law; and (7) Count VIII – claims for breach of contract or a "contract implied in law" under the laws of Colorado New Mexico, Kansas, Louisiana, Indiana, Kentucky, Ohio, Hawaii, and Florida. *See generally* Compl. (Dkt. No. 1). Plaintiffs seek to certify either a class or collective action for each of these claims.

Based, in part, on the Court's dismissal of claims in V*alverde*, on October 10, 2017, Defendants in this matter filed a Motion for Partial Dismissal of Plaintiff's Complaint (Dkt. No.

---

[1] This claim is the subject of Defendants' Motion for Partial Judgment on the Pleadings, which was filed in both this case and *Valverde* on May 29, 2018. As described therein, Colorado law does not provide a private right of action for allegedly missed rest breaks.

20, "Motion"). On May 16, 2018, Magistrate Judge Watanabe issued his Recommendation on Defendant's Motion; he advised that the following claims be dismissed: the civil RICO claims alleged in Count I and Count II of the Complaint, based on Plaintiffs' failure to plausibly allege that their injuries (*i.e.,* unpaid wages) were proximately caused by Defendants' alleged racketeering activities (*i.e.*, mail fraud and wire fraud); the state law claims alleged in Count IV of the Complaint to the extent the claims are based on conduct occurring outside of Colorado; the state law claims alleged in Count V of the Complaint to the extent the claims are based on conduct occurring outside of Colorado; and the state law claims alleged in Count VIII of the Complaint, except for breach of contract claims arising under Colorado law and based on unpaid straight time.

Plaintiffs now argue that Magistrate Judge Watanabe erred in making each one of these recommendations. As explained below, the Court should reject Plaintiffs' arguments, and dismiss all the claims that Magistrate Judge Watanabe has determined should not proceed.

## ARGUMENT

**I.    The Court should adopt the Recommendation and dismiss Plaintiffs' RICO claims.**

Plaintiffs assert the following theory of causation in support of their RICO claims: Xclusive had to provide the United States Department of Labor ("USDOL") and its clients with fraudulent "assurances that it complies with the law," and had to underreport to clients the hours actually worked by its employees, in order to stay in business and attract new customers, and the false assurances and underreporting of hours caused Plaintiffs' damages because, by staying in business, Xclusive was able to continue "stealing wages from Plaintiffs and other similarly situated employees." Plaintiffs' Objections at pp. 1–2. *See also id*. at p. 2 ("Xclusive knew that these representations were false, but it transmitted them to maintain a business model that allowed it to

continue placing its employees with clients while also stealing wages from those employees' paychecks.") and *id*. at p. 4 ("Plaintiffs [have] further alleged that Defendants engaged in this racketeering activity with the purpose of maintaining and attaching business – i.e., clients where their employees could work – while knowingly illegally underpaying their employees.").

As the Recommendation properly recognizes, this theory of "causation" is far too attenuated and speculative to support a RICO claim. *See, e.g.,* Recommendation at p. 11 ("[A]lthough Plaintiffs allege that Defendants used misrepresentations to the USDOL and Xclusive's clients to maintain and attract business *while* depriving their workers of fair wages, their Complaint does not plausibly allege that the misrepresentations *caused* the illegal retention of wages.") (emphasis in original) and *id*. at p. 12 (stating that, while the "USDOL *may* have held Xclusive 'accountable'" if Defendants had not promised that Xclusive would comply with the law, "this [is] necessarily speculative" and does not mean that Xclusive's pay practices would have stopped) (emphasis in original).

Plaintiffs now attempt to avoid dismissal of their RICO claims by raising new allegations that do not appear in their Complaint, and by misrepresenting the Recommendation and the applicable law. Plaintiffs' Objections to the Recommendation should be overruled, and their RICO claims should be dismissed with prejudice.

    A.    <u>Plaintiffs attempt to bolster their causation argument by raising new allegations that do not appear in their Complaint.</u>

Plaintiffs begin by their attack on the Recommendation by asserting new allegations designed to bolster their RICO causation arguments. *See* Objections at p. 2. In particular, Plaintiffs contend in their Objections that Xclusive's "sole product is cheap labor," and that Xclusive offers "cheap labor" to clients who have "offloaded many of their core functions" in an effort "to reduce

labor costs." *Id*. Plaintiffs also contend that (1) a staffing company business model "depends" on clients "being assured" that "their staffing companies are reducing their labor costs without also subjecting those clients to potential litigation risk for wage-and-hour-violations"; and (2) that Xclusive gained a "competitive advantage in the staffing agency market" by making assurances that it complies with the law and by underreporting the hours worked by its employees. *Id*. Plaintiff's Complaint, however, does not include *any* of these allegations. The Court should, therefore, disregard these allegations when ruling on Plaintiff's Objections.[2]

      B.      <u>The Recommendation does not "largely ignore" the applicable law, as Plaintiffs contend.</u>

After raising new allegations that do not appear in the Complaint, Plaintiffs misrepresent the Recommendation and its adherence to applicable law. As explained in Defendants' Motion, a RICO plaintiff must plausibly plead "that the defendant's [RICO] violation not only was a but for cause of his injury, but was the proximate cause as well." Motion at p. 7 (*quoting Safe Street Alliance v. Hickenlooper*, 859 F.3d 865, 889 (10th Cir. 2017)). Further, proximate causation "demand[s] . . . some direct relation between the injury asserted and the injurious conduct alleged." *Id*. *See also Anza v. Ideal Steel,* 547 U.S. 451, 460–61 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries," noting that RICO does not permit suits by those "who have been injured only indirectly"). In their Objections, Plaintiffs agree that, in order to show proximate causation in a RICO case, a plaintiff must show that the defendant's alleged racketeering activity

---

[2] For the reasons described herein, even if the Complaint contained these allegations, Plaintiffs' RICO claims would still fail.

5

led directly to the plaintiff's injury. *See* Plaintiffs' Objections at pp. 4–5. Plaintiffs assert, however, that the Recommendation "largely ignores [this] direct relationship test . . . ." Not so.

The Recommendation contains a detailed description of the law pertaining to proximate cause in RICO cases, including the "direct relationship" test described in Plaintiffs' Objections. *See* Recommendation at pp. 8–9. The Recommendation then correctly holds that Plaintiffs have not plausibly alleged that any racketeering activity directly caused their lost wages. *Id*. at pp. 11–14. As Magistrate Judge Watanabe recognized, the racketeering activity alleged in the Complaint could not have ***directly caused*** Plaintiffs' lost wages because, as alleged in the Complaint, Defendants' payment schemes existed ***before*** the RICO predicate acts occurred. *Id*. For example, as the Recommendation notes, Plaintiffs allege that "clients are more likely to contract with Xclusive" because of fraudulent statements on Xclusive's website regarding its compliance with the law, thus "allowing Xclusive to ***maintain*** its illegal pay policies, which ***have*** harmed Plaintiffs." *Id*. at p. 12 (emphasis in original). *See also* Compl. at ¶ 154) (emphasis added). As explained by Magistrate Judge Watanabe, "[i]t is obvious from this language that Plaintiffs were harmed by Xclusive's pay policies already in place, regardless of what information it put on its website. Plaintiffs do not, and likely cannot, allege that had [*sic*] the misrepresentations on Xclusive's website were the ***direct cause*** of Xclusive's deducting their 30-minute lunch breaks." Recommendation at pp. 12–13 (emphasis added). In other words, the Complaint alleges "that Xclusive's pay practices existed independent of the alleged predicate acts," which therefore "cannot be considered the proximate cause of Plaintiffs' injuries." *Id*.

### C. Plaintiffs misrepresent the law regarding proximate causation.

In addition to asserting – incorrectly – that the Recommendation "largely ignores" the direct relationship test for proximate causation, Plaintiffs also misrepresent the law regarding proximate causation.[3] In particular, Plaintiffs argue that "the touchstone" of the Supreme Court's proximate cause analysis in RICO cases "is the prudential consideration of whether there are other Plaintiffs better situated to sue for the same harm." Objections at p. 5. Whether other plaintiffs might also be able to sue a defendant for harm caused by the defendant's alleged racketeering is ***just one factor*** identified by the Supreme Court as relevant to showing proximate causation; it is not "the touchstone," or even necessarily the most important factor. Courts may, for instance, also examine whether the plaintiff's alleged damages may be attributable to "other, independent factors." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008). In addition, in RICO cases where the alleged racketeering activities involve fraudulent misrepresentations, another relevant factor may be whether anyone actually relied on the alleged misrepresentations. *Id*. at 658–59. Although any of these factors may be considered by a court, "the central question [remains] whether the alleged violation led directly to the plaintiff's injuries." *Anza*, 547 U.S. at 461. *See also Hemi Group, LLC v. City of New York*, 559 U.S. 1, 11–12 (2010) (describing "whether better situated plaintiffs would have an incentive to sue" as "***one consideration*** we have highlighted as relevant to the RICO 'direct relationship' requirement") (emphasis added).

---

[3] Plaintiffs' Objections also state that "the Magistrate Judge agreed with Plaintiffs that their RICO claims were not precluded by the Fair Labor Standards Act." Objections at p. 2. This is misleading. The Recommendation states that Plaintiffs claims are not *completely* precluded by the FLSA, but holds that "for the reasons set forth by Judge Moore in *Valverde*, to the extent that Plaintiffs' RICO claims stem from alleged violations of the FLSA, the claims are precluded and should be dismissed." Recommendation at p. 5.

Plaintiffs not only mischaracterize the "central question" in the proximate cause analysis as whether other individuals are "better situated to sue," but also argue that "if a plaintiff is the only person harmed by the racketeering activity, [then] she is 'directly' harmed." Objections at p. 5. *See also id*. at p. 7 ("The only persons harmed by this mail and wire fraud are Plaintiffs and those similarly situated, [and] that is enough for the 'direct relationship test' and therefore that is enough for RICO proximate cause."). Plaintiffs, however, cite no authority for this proposition – *i.e.,* they cite no authority for the notion that, if only one person is harmed by alleged racketeering activity, then that person is necessarily ***directly*** harmed by the racketeering activity.[4]

The Court should, therefore, reject Plaintiffs' attempts to misrepresent the law regarding RICO proximate cause. As explained above and as set forth in the Recommendation, Plaintiffs have not shown a direct causal connection between the mail and wire fraud alleged in the Complaint and their purported lost wages. Indeed, as explained by Magistrate Judge Watanabe, the Complaint alleges that "Xclusive's pay practices existed independent of the alleged predicate acts." Recommendation at p. 12 (explaining that alleged misrepresentations did not cause Plaintiffs' alleged damages, because those damages flow from "the act of failing to pay Plaintiffs

---

[4] In their Objections, Plaintiffs only reference Magistrate Judge Schaffer's recommendation in *Llacua v. W. Range Ass'n*, 2016 WL 7405468 (D. Colo. Dec. 21, 2016). *See* Objections at p. 6. Plaintiffs suggest that, in *Llacua*, Magistrate Judge Schaffer found that the plaintiffs sufficiently alleged proximate causation in connection with their RICO claims because the alleged fraudulent statements to the USDOL injured "no one but [p]laintiffs" and their injuries were not "derivative of someone else's." *Id*. However, Plaintiffs cite the *Llacua* recommendation out of context. Magistrate Judge Schaffer was not discussing proximate causation, as Plaintiffs suggest. Rather, his recommendation was discussing the principle that civil RICO claims "do not require that the predicate act be directed to the same person whom the defendant intends to deprive of property or money." *See Llacua*, 2016 WL 7405468 at *16. Furthermore, Magistrate Judge Schaffer's recommendation was not adopted by the Court. *See* 2017 U.S. Dist. LEXIS 177985, *10–12 (D. Colo. March 7, 2017).

wages they were entitled to receive"); *Bridge*, 553 U.S. at 654 (when addressing proximate cause, courts may examine whether alleged damages may be attributable to "other, independent factors.").

Furthermore, although the Magistrate Judge's Recommendation explains that it is not "always necessary" for a RICO plaintiff to allege he or she relied on a fraudulent misrepresentation to prove RICO causation (*see* Recommendation at 11), "[i]n most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation." *Bridge,* 553 U.S. at 658–59 (stating that, in addition, "the complete absence of reliance may prevent the plaintiff from establishing proximate cause," and a plaintiff's lack of reliance on a misrepresentation may "tend to show that an injury was not sufficiently direct to satisfy [RICO's] proximate-cause requirement"). *See also CGC Holding Co., Ltd. Liab. Co. v. Broad & Cassel*, 773 F.3d 1076, 1089 (10th Cir. 2014) ("[I]n [RICO] cases arising from fraud, a plaintiff's ability to show a causal connection between defendants' misrepresentation and his or her injury will be predicated on plaintiff's alleged reliance on that misrepresentation" because "causation is often lacking where plaintiffs cannot prove that they relied on defendants' alleged misconduct."). Here, the Complaint is devoid of any allegation that any of Xclusive's clients – or any of the Plaintiffs themselves – relied in any way on any fraudulent or misleading statements allegedly made by the Defendants, which is a strong indication that Plaintiffs were not directly injured by the alleged misrepresentations, and that the Court should dismiss Plaintiffs' RICO claims.

Indeed, this case is similar to the one addressed by the Supreme Court in *Anza*, in which the Court held a plaintiff could not prove a RICO claim against a business competitor based on that competitor's fraud against the State of New York. 547 U.S. at 457. The plaintiff – who alleged

that it lost sales because its competitor was able to charge lower prices by evading payment of sales taxes to the State of New York – could not show proximate causation because "[i]t was the State that was being defrauded [by the competitor's sales tax evasion] and the State that lost tax revenue as a result." *Id.* at 458. The Court acknowledged the plaintiff suffered harm when the competitor did not charge customers sales tax, but noted that "[t]he cause of [plaintiff's] asserted harms, however, is a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)." *Id*.

The *Anza* Court further explained that the causal link between the plaintiff's alleged damages and the competitor's alleged misconduct was too speculative:

> The injury [plaintiff] alleges is its own loss of sales resulting from [defendant's] decreased prices for cash-paying customers. [Defendant], however, could have lowered its prices for any number of reasons unconnected to the asserted pattern of fraud. It may have received a cash inflow from some other source or concluded that the additional sales would justify a smaller profit margin. Its lowering of prices in no sense required it to defraud the state tax authority.
>
> . . . .
>
> Further illustrating this point is the speculative nature of the proceedings that would follow if [the plaintiff] were permitted to maintain its claim . . . [including the need] to calculate the portion of [the plaintiff's] lost sales attributable to the relevant part of the [defendant's] price drop. The element of proximate causation . . . is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation.

*Anza*, 547 U.S. at 458–460.

Likewise, in this case, Plaintiffs complain of fraud directed at the USDOL and Xclusive's clients, rather than Plaintiffs themselves, and the alleged RICO acts (*i.e*., misrepresentations to the USDOL and Xclusive's clients) are "entirely distinct" from the Plaintiffs' alleged damages (*i.e*., lost wages). *See, e.g.,* Recommendation at p. 13 ("Plaintiffs do not sufficiently allege that Defendants 'needed' to lie to its clients and the government in order to pay their workers less.").

These facts are a clear indication that proximate cause is lacking. *See Anza*, 547 U.S. at 458. *See also Holmes v. Sec. Invest. Protection Corp.*, 503 U.S. 258, 268-69 ("[A] plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [i]s generally said to stand at too remote a distance to recover [under RICO]." ).

Furthermore, Plaintiffs' theory of causation – *i.e.*, that Xclusive had to lie to the USDOL and its clients to stay in business, and by staying in business, Xclusive was able to continue underpaying its employees – is far too attenuated and speculative to support a RICO claim. Like in *Anza*, where the defendant "could have lowered its prices for any number of reasons unconnected to the asserted pattern of fraud," Defendants in this case could have underpaid wages "for any number of reasons" unconnected to the RICO misrepresentations alleged in the Complaint.[5] Similarly, in *Anza*, the defendant's "lowering of prices in no sense required it to defraud the state tax authority"; here, as noted by Magistrate Judge Watanabe, "Plaintiffs do not sufficiently allege that Defendants 'needed' to lie to its clients and the government in order to pay their workers less." Recommendation at p. 13. Moreover, like the RICO claims in *Anza* – which would have required the trial court to engage in a speculative inquiry "to calculate the portion of [the plaintiff's] lost sales attributable to the relevant part of the [defendant's] price drop" – permitting the RICO claims in this case to move forward would eventually require the Court to speculate on (1) the portion of unpaid wages that occurred ***before*** Defendants made any of their alleged misrepresentations (*see* Recommendation at pp. 11-13 (explaining that, according to Plaintiffs' allegations, Defendants' pay practices existed before any alleged misrepresentations were made to the USDOL and Xclusive's clients); and (2) for any lost wages occurring ***after*** the

---

[5] To be clear, though, Defendants deny ever underpaying wages to employees.

misrepresentations were made, the portion of damages attributable to the misrepresentations allegedly made to the USDOL and/or to Xclusive's clients. As explained in *Anza*, "proximate causation . . . is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation. *Anza*, 547 U.S. at 460.

In fact, to further illustrate the attenuated and speculative nature of Plaintiff's causation theory, Plaintiffs' allegations regarding the "USDOL scheme" relate to Xclusive's pay practices at only two hotels – the Grand Hyatt and the Hampton Inn & Suites – and the USDOL's "disposition" of investigations at those hotels. Compl. at ¶¶ 138–40, 143. None of the Plaintiffs allege that they performed work at the latter hotel, and therefore, any allegation that fraudulent statements to the USDOL concerning pay practices at that location led to Plaintiffs' lost wages would be extremely attenuated and entirely speculative. Moreover, although three of the Plaintiffs allege they performed some work at the Grand Hyatt, none of them allege that they were underpaid while working there. In short, there are no allegations showing a direct causal link between Plaintiffs' lost wages and any alleged fraudulent statements made to the USDOL.

Regarding the remaining RICO "schemes" alleged in the Complaint – the "Website Scheme," the "Electronic Timekeeping Scheme," and the "Faxed Timesheet Scheme" – although Plaintiffs allege that each scheme misled Xclusive's ***clients***, there is no allegation that ***Plaintiffs*** were directly harmed. Compl. at ¶¶ 154, 162, 168. Like the RICO allegations in *Holmes*, these allegations are insufficient to establish causation. *Holmes*, 503 U.S. at 268–69 ("[A] plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [i]s generally said to stand at too remote a distance to recover [under RICO].").

D.   The Recommendation's citation to *DeSilva* is not improper.

Plaintiffs' Objections argue that the Recommendation "relies largely" on a Second Circuit case, *DeSilva v. N. Shore-Shore Long Island Jewish Health Sys.*, 770 F. Supp.2d 497 (E.D.N.Y. 2011), which Plaintiffs contend is "improper." *See* Objections at p. 7. The Recommendation, however, cites *DeSilva* only twice, and neither instance is "improper." First, the Recommendation notes that while the "false statements" alleged in the Complaint may have allowed Defendants to "facilitate or further Plaintiffs' 'original' injury, they were not the acts from which this injury directly flowed." Recommendation at p. 12 (*citing DeSilva*, 770 F. Supp.2d at 524) (noting that an act that proximately causes an injury and from which the injury "directly flows" is "analytically distinct from one which furthered, facilitated, permitted, or concealed an injury which happened or could have happened independently of the act")). Second, the Recommendation states that "defendants' misrepresentations and omissions regarding their failure to fully compensate plaintiffs is not the proximate cause of the ultimate harm to plaintiffs, which instead originates in defendants' underlying failure to properly pay plaintiffs for all hours worked." Recommendation at p. 14 (*citing DeSilva*, 770 F. Supp.2d at 525). There is no binding legal authority that requires the Court to reject the analysis in *DeSilva* or declare the Recommendation's citations to *DeSilva* improper.

The Plaintiffs attempt to render any citation to *DeSilva* inappropriate by arguing (1) that the district court in *DeSilva* adopted a new causation standard by requiring predicate RICO acts to be "indispensable" to the injuries experienced by a plaintiff; and (2) the Norther District of Oklahoma's decision in *Jeter v. Wild West Gas, LLC*, 2015 WL 5970992 (N.D. Okla. Oct. 14, 2015) "refused to follow" the analysis in *DeSilva*. Objections at pp. 7-9. Although *DeSilva* uses

13

the term "indispensable," the court's analysis is entirely consistent with the Supreme Court's direct relationship test. The *DeSilva* court held that the defendants' alleged underpayment of wages ***could not be directly caused*** by alleged fraudulent mailings because, "based on plaintiffs' own arguments [in which plaintiffs argued that fraudulent statements allowed the defendants to *continue* underpaying wages] plaintiffs could have been harmed (and allegedly were harmed) *irrespective* of the alleged misrepresentations." *DeSilva*, 770 F. Supp.2d at 525 (emphasis added). In other words, *DeSilva* correctly applied the law: an injury cannot be "directly caused" by a predicate RICO act if the injury occurred regardless of the act. This is entirely consistent with the Supreme Court's direct relationship test for proximate causation. *See, e.g., Anza*, 547 U.S. at 458–460 (explaining that plaintiff's causation theory was too speculative and attenuated where plaintiff's injuries could have occurred irrespective of the defendant's tax fraud).

The decision in *Jeter* is also unavailing to Plaintiffs. Not only is *Jeter* not binding on this Court, but it did not address *DeSilva* and it involved a factual situation that is quite different than the one presented in this case. In particular, the plaintiffs in *Jeter* alleged that they relied on royalty statements provided by the defendants, which wrongly stated that no royalties were being deducted from compensation paid to the plaintiffs. *Jeter*, 2015 WL 139639 at *41. According to the plaintiffs, these fraudulent royalty statements led directly to damages; they were lulled into inaction, which allowed the fraud to continue and their damages to mount. *Jeter*, 2015 WL 139639 at *41. Here, there is no allegation that any of the Plaintiffs relied on any of the misrepresentations alleged in the Complaint. Further, the alleged causation in this case – fraudulent statements allowing Defendants to stay in business, which in turn allowed the Defendants to continue

14

"stealing wages" – is much more speculative and attenuated that the causation theory relied upon by the plaintiffs in *Jeter*.

Next, Plaintiffs argue that the Recommendation errs in analyzing whether Plaintiffs were the "intended victims" of Defendants' alleged RICO schemes. Objections at pp. 11-12. Specifically, Plaintiffs argue that (1) "it is not at all apparent why [such an allegation] is a legal requirement to show proximate cause"; and (2) to the extent the Recommendation analyzed whether Plaintiffs were "intended victims" because it considered the issue "relevant to foreseeability," it was a legal error to evaluate proximate cause based on foreseeability. *See id*. at p. 11. The Recommendation, however, only analyzes the "intended victim" issue because it was raised by Plaintiffs in their Response to Defendants' Motion. *See* Response (Dkt. No. 5) at p. 9; *see also* Recommendation at p. 13 (noting that Plaintiffs made the "intended victim" argument in their Response). Moreover, the Recommendation does not mention foreseeability *at all*. Even if the Recommendation did independently consider the "intended victim issue and foreseeability, the "invited error" doctrine should bar Plaintiffs' Objections on these grounds, as the Plaintiff's invited the Magistrate Judge to consider these issues in their Response to Defendants' Motion. *See* Response (Dkt. No. 5) at p. 9 ("In this case, even when they were not relying on Xclusive's fraud, Plaintiffs were the intended victims of the fraud."); *United States v. DeBerry*, 430 F.3d 1294, 1302 (10th Cir. 2005) ("Having induced the court to rely on a particular erroneous proposition of law or fact, a party may not at a later stage use the error to set aside the immediate consequences of the error. In other words, the invited-error doctrine precludes a party from arguing that the district court erred in adopting a proposition that the party had urged [it] to adopt") (citation omitted).

Finally, the Plaintiffs argue that, even if they needed to show they were the intended victims of Defendants' racketeering activities, they have pled allegations that meet such a requirement. *See* Objections at p. 11. However, there are no allegations in the Complaint supporting the notion that Plaintiffs were "intended victims." This argument should, therefore, be rejected.

In summary, the Recommendation correctly frames the proximate cause question: whether the fraudulent misrepresentations alleged in Plaintiffs' Complaint directly caused Plaintiffs' allegedly lost wages, where the only theory of causation is that the alleged misrepresentations allowed Defendants to stay in business and, therefore, continue underpaying wages. The Court should hold that the answer is obvious: no. Plaintiffs' Complaint fails to sufficiently allege causation, and Plaintiffs' RICO claims should be dismissed with prejudice.

**II.     The Court should adopt the Recommendation and dismiss state law claims based on conduct occurring outside of Colorado.**

As explained in Defendants' Motion, the Court should dismiss Plaintiffs' Fourth, Fifth, and Eighth causes of action to the extent they are based on the laws of states other than Colorado because Plaintiffs – who have worked for Xclusive only in Colorado – lack standing to assert claims under the laws of any other states. Motion at pp. 16–17. This Court reached the same conclusion in *Valverde*, refusing the plaintiffs' request to defer a standing analysis until after a class is certified. *See Valverde*, Dkt. No. 193 at pp. 14–15. In their Objections, Plaintiffs simply state their disagreement with the Court's decision in *Valverde*, and again request that the Court defer a standing analysis until after class certification. Objections at p. 13.  In other words, as noted by Magistrate Judge Watanabe, Plaintiffs fail to cite any new authority and fail to raise any new arguments to stave off dismissal. *See* Recommendation at p. 15. The Court should, therefore,

dismiss Plaintiffs' Fourth, Fifth, and Eighth causes of action to the extent they are based on the laws of states other than Colorado with prejudice, just as it did in *Valverde*.

### III. The Court should adopt the Recommendation and dismiss Plaintiffs' equitable claims.

Defendants' Motion seeks dismissal of Plaintiffs' breach of contract, breach of implied contract, and unjust enrichment claims to the extent the claims are based on nonpayment of overtime wages. Motion at p. 19. As the Court held when addressing the same claims in *Valverde*, such claims are preempted by the FLSA. *Valverde*, Dkt. No. 193 at pp. 19–20, 23 (citing cases); *see also Barnett v. Pikes Peak Cmty. Coll. Police Dep't*, 2015 WL 4245822 (D. Colo. 2015) (plaintiffs' breach of contract claims for overtime wages preempted by FLSA). Plaintiffs' Objections merely rehash the same argument rejected by the Court in *Valverde*. *See* Objections at pp. 13–14 (*citing Irigoyen-Morales v. Concreations of Colo., Inc.*, 2016 U.S. Dist. LEXIS 85837 (D. Colo. 2016)); *Valverde*, Dkt. No. 91 at p. 33 (making same argument and citing same case). The Objections should, therefore, be overruled and the claims dismissed with prejudice to the extent they are based on the nonpayment of overtime wages.

Plaintiffs' unjust enrichment claim should, in fact, be dismissed in its entirety because an unjust enrichment claim "cannot be maintained where the parties have reached an agreement between themselves as to the terms upon which compensation will be paid ***absent an allegation that the agreement is invalid or unenforceable*** . . . ." *Perez* v. *Pinon Mgmt. Inc.*, 2013 WL 1149567, *9 (D. Colo. 2013) (emphasis added). *See also Jorgensen v. Colorado Rural Properties, LLC,* 226 P.3d 1255, 1259 (Colo. App. 2010) ("[A] claim for unjust enrichment may not be asserted if there is a valid contract covering the subject matter of the alleged obligation to pay."). Here, Plaintiffs admit they were parties to employment contracts with Xclusive that promised

17

payment of "an hourly wage for all hours worked" and that "incorporate[ed] state and federal wage and hour laws." Compl. at ¶¶ 241–42. Plaintiffs do not allege the contracts are invalid or unenforceable. Plaintiffs' unjust enrichment claims are, therefore, barred by the existence of their alleged employment agreements.

Plaintiffs argue their unjust enrichment claims should not be dismissed because they are "pled in the alternative, if the contract claim fails." Objections at p. 14. This argument cannot salvage their claims. In *Perez*, the court dismissed plaintiff's unjust enrichment claim where the plaintiff alleged "a contractual relationship existed between [herself] and Defendants wherein Defendants agreed to pay [her] for all hours worked," ***but failed to allege that the agreement was invalid or unenforceable***. *Perez,* 2013 WL 1149567 at *9. *See also EchoStar Satellite, L.L.C. v. Splash Media Partners, L.P.*, 2010 WL 3873282, *8 (D. Colo. 2010) (holding that " '[a]lternative pleading ... does not limit the principle that an express contract precludes an implied contract on the same subject matter' " and the "fact that EchoStar's breach of contract claim may fail does not allow EchoStar to plead unjust enrichment in the alternative") (*quoting Interbank Investments, LLC v. Eagle River Water & Sanitation Dist.,* 77 P.3d 814, 816 (Colo.App.2003)). The Recommendation, relying on *Perez* and *EcioStar*, correctly states that the same result should occur here – even though Plaintiffs attempt to plead their unjust enrichment claim as an "alternative" to their breach of contract claim, the unjust enrichment claim must be dismissed. Recommendation at p. 17.

Finally, the Court should also dismiss Plaintiff's promissory estoppel claim, just as it did in the *Valverde* case. Plaintiffs fail to allege facts supporting the second element of their claim – *i.e*., they fail to allege they reasonably and detrimentally relied on a promise made by Xclusive.

Motion at pp. 19–20; *Valverde*, Dkt. No. 193, at p. 20.  Plaintiffs argue they relied on a promise in their contracts with Xclusive that they would be paid for every hour worked.  Objections at p. 14–15.  However, as recognized in the Recommendation, this allegation appears nowhere in the Complaint, and accordingly, the claim should be dismissed.  Recommendation at p. 17.

**IV.     The Court should reject Plaintiffs' conferral arguments.**

Finally, Plaintiffs complain that Defendants failed to fully confer regarding the Motion and argue that, "[t]o the extent that the Court finds that dismissal of some claims is necessary because of technical pleading deficiencies, Plaintiffs should be given leave to amend to correct those deficiencies, as Defendants effectively robbed them of that opportunity." This argument should be rejected.  Plaintiffs clearly told Defendants that they had no intention of dropping their RICO claims and non-Colorado state law claims. *See* Dkt. No. 25-1 at p. 5. Furthermore, Plaintiffs' argument rings hollow; in response to Defendants' Motion, Plaintiffs have not sought to file an amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1)(B) and have, instead, argued in their Response that their allegations are sufficient to support their claims. Regardless, as noted in Defendant's Objections to the Recommendation, any amendment to the Complaint would be futile and, as such, the claims should be dismissed with prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (noting that a district court may dismiss a claim with prejudice when it would be futile to allow the plaintiff an opportunity to amend the complaint).

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court overrule Plaintiffs' Objections to the Magistrate Judge's Recommendation.

Dated: June 13, 2018.

        SHERMAN & HOWARD L.L.C.

        *s/ Matthew M. Morrison*
        Jonathon M. Watson
        Matthew M. Morrison
        633 Seventeenth Street, Suite 3000
        Denver, CO  80202
        Telephone:  (303) 297-2900
        Email:  mmorrison@shermanhoward.com
        Email:  jwatson@shermanhoward.com

        *Attorneys for Defendants*

## CERTIFICATE OF SERVICE (CM/ECF)

   I hereby certify that on this 13th day of June, 2018, I electronically filed the foregoing **DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON MOTION FOR PARTIAL DISMISSAL** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

  Alexander Hood
  David Seligman
  TOWARDS JUSTICE
  1410 High St., Suite 300
  Denver, CO  80218
  *Attorneys for Plaintiffs*
  alex@towardsjustice.org
  david@towardsjustice.org

        *s/ Louisa Boyte*

Active/48570778.1