IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 16-cv-00671-RM-NRN
Consolidated with Civil Case No. 17-cv-01602-RM-NRN for Settlement Approval

ISABEL VALVERDE;
MARIA SONIA MICOL SIMON; and those similarly situated,

    Plaintiffs,

v.

XCLUSIVE STAFFING, INC., *et al.*,

    Defendants.

## ORDER

This matter is before the Court on the following matters: (1) Motion for Final Approval of Proposed Class and Collective Action Settlement Agreement ("Motion to Approve") (ECF No. 311); and (2) Motion for Attorney's Fees and Expenses (ECF No. 315) ("Motion for Fees") (Motion to Approve and Motion for Fees collectively referred to as "Motions"). On May 26, 2020, the Court held a fairness hearing in which Plaintiff Simon appeared *pro se*[1] and the other parties appeared through counsel. The Court indicated it would likely approve the Motions but directed the parties to submit additional information. Thereafter, counsel for the parties[2] submitted additional information for the Court's consideration. In addition, Ms. Simon filed a letter. The Court has examined the record, considered the matters and arguments raised at the hearing, and analyzed the parties' subsequent filings. In addition, the Court has considered the

---

[1] Ms. Simon was previously represented by the same counsel which represents all other Plaintiffs, i.e., class counsel.
[2] Defendant HCA-HealthONE LLC d/b/a Sky Ridge Medical Center is not a party to the Motions because it has already settled.

applicable rules and case law and is otherwise fully advised. Based on the foregoing, the Court finds and orders as follows.

## I.  BACKGROUND

Defendants Xclusive Staffing, Inc. and Xclusive Staffing of Colorado, LLC (collectively "Xclusive") are staffing agencies based in Colorado which are allegedly owned and controlled by Defendant Diane Astley. Defendant Xclusive Management, LLC is an affiliate of Xclusive. Xclusive provides low-wage workers for its clients which are mostly hotels like Defendants Omni, JMIR (Hyatt), Marriott, and Westin. Plaintiffs allegedly work or worked at one or more of Xclusive's client locations in Colorado providing various services such as being a cook or server at banquets.

At issue are two actions, the *Valverde* Action (16-cv-671) and the *Trejo* Action (17-cv-1602). Plaintiffs in these actions allege Xclusive maintains various policies and practices which violate state and federal wage and hour laws. As relevant here, they consist allegedly of: (1) the $3.00 deduction as an administrative charge per paycheck policy[3]; (2) the automatic 30-minute (lunch) break deduction policy, regardless of whether the employee was given or took this break; and (3) the failure to provide a 10-minute break policy (as required under Colorado law). Over the course of these actions, there were many filings and orders issued. As relevant here, among the orders issued was an order authorizing conditional certification of the opt-in collective action as a nationwide class against Xclusive for the $3.00 paycheck deduction policy (the "FLSA Order"). (ECF No. 248.)

---

[3] According to Plaintiffs, except Ms. Simon, this policy ended in 2016 (ECF No. 320, p. 4.)

The parties reached a proposed settlement on a class and collective actions basis, but as to Colorado workers[4] only. Upon motion filed by Plaintiffs Isabel Valverde, Jose Trejo, Marisol Trejo, Vilma de Jesus Alvarenga Carranza, and Obdulia Julie Cortez (collectively, "Movants"), the Court issued an order addressing certain matters. First, the Court preliminarily approved the proposed settlement; certified, for settlement purposes, a Rule 23 class and subclass for Colorado; and conditionally certified, for settlement purposes, opt-in collective action members under the Fair Labor Standards Act ("FLSA") for Colorado workers. Next, the Court approved Movants as class representatives; Movants' counsel as class counsel; Optime Administration, LLC as class administrator; notices and forms to be sent regarding the proposed settlement; and a proposed schedule to facilitate the claims process and any final approval and distribution. Then, the Court stayed the FLSA Order and continued the tolling of the statute of limitations as to those conditionally certified collective actions members.

After notices were sent and claims forms submitted, Movants filed the Motions at issue and the Court held the fairness hearing. No written objections were submitted or filed. After allowing counsel for the parties and Ms. Simon to raise any objections and address various matters, the Court made the following findings and rulings during the hearing:

(1) The class consists of about 9,491 current and former employees, 734 timely claims were filed, 9 class members opted-out, and no objections were filed;

(2) 70 claims were submitted late but they were accepted and, subject to (3) below, would receive funds to be distributed from the "Net Settlement Fund," as that term is defined in this Order;

---

[4] Xclusive employees who worked at any of Xclusive's clients' Colorado locations, except at Sky Ridge Medical Center. As stated, Sky Ridge Medical Center has already settled in this action.

3

(3) The total number of claims (including the 70) filed are 804, of which 29 are unconfirmed class members. The parties were to provide the Court with a status report as to whether these persons are or are not class members;

(4) Based on the Court's familiarity with the work and issues in this case, and after applying the *Johnson* factors,[5] the Court found the attorney's fees ($380,000) and costs ($7,719.43) requested in the Motion for Fees are reasonable and, therefore, approved. *See* 29 U.S.C. § 216(b) (court shall allow reasonable attorney's fee to be paid by defendant and costs of the action); Fed. R. Civ. P. 23(h) (court may award reasonable attorney's fees and nontaxable costs authorized by law or by the parties' agreement). The lodestar crosscheck shows a multiplier of 1.42; this also supports the reasonableness of the fees requested;

(5) That the Movants and Ms. Simon shall be paid an incentive or service award of $20,000 each, for a total of $120,000;

(6) That the estimated class administrator[6] fees and costs of $44,371.30 were appropriate, but the Court would accept an update on the total amount to be requested; and

(7) That because the class consists of about 9,491 current and former employees but only 804 claims have been filed, an issue was raised as to the distribution of Net Settlement Fund as between the claimants and *cy pres* and the Court's exercise of its

---

[5] *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d, 717-19 (5th Cir. 1974). The Tenth Circuit has applied the *Johnson* factors on numerous occasions. *E.g., Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.,* 888 F.3d 455, 458 (10th Cir. 2017).
[6] Sometimes referred to in the papers as settlement administrator.

discretion on this issue. But, in order for the Court to make its decision, the parties were directed to provide additional information after the hearing.[7]

As stated, all parties have filed submissions for the Court's consideration.

## II. DISCUSSION

### A. The Motion to Approve

#### 1. Administrator Fees and Costs

Movants advise the updated class administrator fees and costs are $46,128.90. Upon review of the declaration submitted in support of this amount, the Court determines such fees and costs are reasonable and, therefore, approved.

#### 2. Service Award

Ms. Simon's letter argues the incentive award should be more than $20,000 because (1) she signed papers saying she took a lunch or break when she did not; (2) Xclusive charged them $3.00 a week just to get a paycheck; (3) this case was filed in 2015 or 2016; and (4) she does not know how to file a claim. The Court finds the arguments unpersuasive.

The first two arguments go to the issue of the amount claimants are to be compensated, not to the amount of the incentive award. Next, to the extent Ms. Simon is arguing she did a lot of work over several years in this case, the Court agrees that she did so but has already considered this in determining that $20,000 was fair and reasonable. Finally, Ms. Simon has filed a claim; therefore, she will be among the claimants who will receive her proportionate share of the Net Settlement Fund which the Court determines should be distributed to the claimants. Accordingly, any objection or request for relief in Ms. Simon's letter is denied.

---

[7] The Court allowed all parties to submit further matters after the hearing.

3. **Net Settlement Fund**

The represented parties agree the total number of valid claims are 782; therefore, the settlement should proceed with 782 participating class members out of a possible 9,491. Based on the amounts approved by the Court, the Net Settlement Fund is $966,151.67, determined as follows:

| Settlement Fund Amount | $1,520,000.00 |
|---|---|
| Attorney's Fees | 380,000.00 |
| Attorney's Costs | 7,719.43 |
| Administrator Fees & Costs | 46,128.90 |
| Service Awards | 120,000.00 |
| **Net Settlement Fund or NSF** | **$ 966,151.67** |

This fund was designed to pay 9,491 class members who worked a total of 199,149 workweeks, but there are 782 claimants who worked a total of 38,262 workweeks. The 782 claimants represent about 8.2% of the total class and 19.2% of the workweeks. The parties offer the following proposals for the Court's consideration:

| **Amount of NSF for Claimants** | **Amount of NSF for Cy Pres** |
|---|---|
| $966,151.67 | $0 |
| $791,151.67 | $175,000.00 |
| $556,712.10 | $409,439.57[8] |

---

[8] Defendants state this leaves $409,455.47 (ECF No. 321, ¶7) as the residual, but the Court's calculation finds the amount which remains is $409,439.57.

All parties,[9] however, agree that any uncashed checks distributed to the claimants shall be distributed cy pres. The issue before the Court is how best to distribute the Net Settlement Fund in the first instance, in light of the facts, the parties' arguments, and the law.

 "A district court may approve a proposed settlement only after finding that it is fair, reasonable, and adequate. … A cy pres remedy contained in a class-action settlement must also be reviewed through that lens." *Allred v. ReconTrust Co., N.A.*, 787 F. App'x 994, 996 (10th Cir. 2019) (internal quotation marks omitted). The Court's research revealed no controlling opinion on the issue at hand. However, in *Allred*, an unpublished decision, the Tenth Circuit cited to three cases from other Circuits which, upon review, the Court finds some guidance.

In *In re Baby Products Antitrust Lit.* 708 F3c 163 (3rd Cir. 2013), the Third Circuit stated that direct distributions to the class are preferred over *cy pres* distributions; recognized the American Law Institute's preference for further distributions to participating class members unless amounts are small or "other specific reasons exist" that would make further distributions impossible or unfair; and provided factors for the district court to consider to conduct a practical inquiry into the degree of direct benefit provided to the class. 708 F.3d at 173-74. In *In re Pharm. Indus. Avg. Wholesale Price Lit.*, 588 F.3d 24 (1st 2009), the First Circuit also recognized the ALI expressed a policy preference for redistributing remaining settlement money to class members to ensure they recover their losses. Nonetheless, the First Circuit implicitly recognized the ALI was only a *guide*. And, in *Lane v. Facebook*, 696 F.3d 811 (9th Cir. 2012), a case alleging violating of federal and state privacy statutes, the entire net settlement amount would be distributed *cy pres* through a newly created charity organization. The challenge

---

[9] Ms. Simon raised no objection or comments concerning the *cy pres* distribution.

there was not to what amount should be distributed *cy pres* but, rather, whether this new organization should be entrusted to do so. In analyzing this argument, the Ninth Circuit recognized the *cy pres* doctrine allows a court to distribute unclaimed and non-distributable portions of a class action settlement fund, *id.* at 819, something the parties in this case do not dispute.

In this case, based on the parties' filings, and as reflected in the notice sent to the class members, the parties recognized there would be unclaimed funds. That is unremarkable considering the mobile nature of the employees at issue. The papers also contemplated that if the unclaimed funds exceeded $175,000, the parties would return to the Court with proposals for distributing additional amounts to class members. (ECF No. 296, p. 12.) In this case, based solely on the claimants' proportionate share of the $966,151.67 NSF, there would be $780,586.97 in unclaimed funds.[10] No party suggests this would result in a settlement that is fair, reasonable, and adequate.

Defendants propose the value of a workweek be tripled, to $14.55, as a fair and reasonable compromise, resulting in $556,712.10 being shared by the 782 claimants. The Court finds Defendants' methodology reasonable. However, based on the record, the Court finds that a multiplier of 4 to the $4.85 per workweek is a compromise which results in a fair, reasonable, and adequate settlement.

Using a multiplier of 4, the average workweek is worth $19.40. Multiplied by 38,262 workweeks, this would result in $742,282.80 being paid to the 782 claimants. This would

---

[10] This number is based on the following: (1) $966,157.67 (NSF)/199,149 total workweeks = $4.85/workweek; (2) the claimants worked at total of 38,262 workweeks; (3) $4.85/workweek x 38,262 workweeks = $185,570.70 (value of claimants' workweeks); and (4) $966,157.67 - $185,570.70 = $780,586.97.

represent paying the claimants for the $3.00 deducted per paycheck for the 19,131[11] workweeks at issue ($57,393.00), and approximately two 30-minute breaks missed per workweek and four 10-minute breaks missed per workweek. As Defendants argue, Plaintiffs represented that discovery showed they "sometimes" worked off the clock during lunch breaks and "sometimes" did not receive 10-minute breaks. (ECF No. 311, p. 9.)[12] The Court finds this amount ($742,282.80) recognizes that settlements don't generally award 100% of a class member's losses and, accordingly, a preference should be made to increase the claimants' recovery should there be unclaimed amounts. At the same time, it recognizes that any redistributions should not result in a windfall to the claimants.

With $742,282.80 to be distributed pro rata to the claimants, that leaves $223,868.87 to *cy pres*. An amount which is reasonably within the contemplation of the parties of what may remain unclaimed when they entered into the proposed settlement, i.e., $175,000.00.

### 4. Final Certification under 29 U.S.C. § 216(b)

By Order dated November 8, 2019 (ECF No. 306), the Court conditionally certified the following opt-in collective action members pursuant to 29 U.S.C. § 216(b):

> ALL CURRENT AND FORMER HOURLY EMPLOYEES OF XCLUSIVE STAFFING, INC., XCLUSIVE STAFFING OF COLORADO, LLC, OR ANY OF THEIR AFFILIATES, WHO WORKED AT ONE OF THEIR CLIENTS' COLORADO LOCATIONS (EXCEPT SKY RIDGE MEDICAL CENTER HCA-HEALTHONE LLC) AND WERE EMPLOYED ON OR AFTER MARCH 22, 2013 AND UP TO AND INCLUDING FEBRUARY 3, 2019.

---

[11] Because the $3.00 deduction policy ended approximately halfway through the class period, the workweeks at issue are divided by two (2) as to the $3.00 deduction (38,262 workweeks/2 = 19,131 workweeks). 19,131 workweeks x $3/workweek = $57,393.00.

[12] This also aligns with Plaintiffs' expert's best case class-wide actual damages scenario, based on receipt of the 10-minute breaks and 30-minute lunch breaks 60% of the time: (1) $3,596,461.04/199,149 workweeks = $18.06/workweek; (2) $18.06/workweek x 38,262 workweeks = $691,011.72; and (3) $691,011.72 + $57,393.00 ($3/paycheck) = $748,404.72. (ECF No. 311, p. 10.)

After considering the *Thiessen*[13] factors, the Court finds final certification should be granted.

### 5. Approval under Rule 23 and the FLSA

For the reasons stated herein and during the hearing, the Court finds the requirements for settlement under Rule 23(a), (b)(3), and (e) of the Federal Rules of Civil Procedure and under the FLSA are met. Accordingly, the Motion to Approve is granted as stated herein.

### B. Motion for Fees

Based on the findings of fact and conclusions of law stated during the hearing and as further set forth herein, the Court finds the requested fees and costs are reasonable. Therefore, the Motion for Fees is granted.

## III. CONCLUSION

Based on the May 26, 2020 hearing and the forgoing, it is **ORDERED**

(1) That the Order (ECF No. 248) authorizing the following is **WITHDRAWN:**[14]

That the opt-in collective action is conditionally certified as a nationwide class against Xclusive Defendants for the $3.00 deduction policy:

ALL CURRENT AND FORMER HOURLY EMPLOYEES OF XCLUSIVE STAFFING, INC., OR ONE OF ITS SUBSIDIARIES, THAT WORKED AT ONE OF ITS CLIENTS' LOCATIONS (EXCEPT HCA-HEALTHONE LLC) EMPLOYED ON OR AFTER MARCH 22, 2013, AND HAD $3.00 DEDUCTED FROM THEIR PAYCHECK AS A "FEE";

---

[13] *Thiessen v. General Elec. Cap. Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001) (discussing ad-hoc two-tiered approach). *Thiessen* was decided under the ADEA, which expressly borrows the opt-in collective action mechanism of the FLSA. *Thiessen*, 267 F.3d at 1102.

[14] No other matters in that Order are withdrawn. Only the discussion, analysis, and order as to the $3.00 deduction policy are withdrawn.

(2) That the Motion for Final Approval of Proposed Class and Collective Action Settlement Agreement (ECF No. 311) is **GRANTED** as stated herein;

(3) That the FLSA collective members are similarly situated and final certification of the members as identified herein is made;

(4) That the Settlement (ECF No. 296-1) is fair, adequate, and reasonable under Fed. R. Civ. P. 23(e) and the Fair Labor Standards Act and, therefore, approved;

(5) That the Net Settlement Amount (as defined in this Order) shall be distributed as follows: $742,282.80 to claimants on a pro rata basis based on their respective workweeks worked and $223,868.87 *cy pres*;

(6) That Centro Humanitario Para Los Trabajadores and The Boulder Jewish Community Center are approved as the *cy pres* recipients, with $223,868.87 to be divided equally between them. Class counsel shall direct both organizations to use all funds to benefit low-wage workers in Colorado;

(7) That any residual caused by any uncashed checks sent to the claimants shall also be applied to the *cy pres*, divided equally between them, and used for the same purpose;

(8) That the Motion for Attorney's Fees and Expenses (ECF No. 315) is **GRANTED** and the Class Administrator shall pay class counsel their fees and costs (totaling $387,719.43) out of the settlement fund;

(9) That the Class Administrator shall be paid its fees and costs in the amount of $46,128.90 out of the settlement fund;

11

(10) That each of the six named Plaintiffs in these consolidated actions shall be paid a service award of $20,000.00, for a total of $120,000.00;

(11) That, in accordance with the Settlement (ECF No. 296-1 at 8-9), the schedule for disbursement of settlement funds is as follows:

| **Effective Date** | **Settlement Agreement (ECF No. 296-1, ¶43).** |
|---|---|
| Defendants provide employment information to the Class Administrator to calculate *pro rata* payments to the Claimants. | Within 7 days of the Effective Date. |
| Class Counsel shall provide Defendants' Counsel with wiring instructions and a Form W-9 for the QSF, and any documents reasonably required by Defendants to process the funding of the QSF. | Within 14 days of the Effective Date. |
| Defendants will pay the Class Settlement Amount to the QSF. | Within 35 days of the Effective Date. |
| Distribution of settlement funds by Class Administrator in accordance with the Court's Order of July 20, 2020. | Within 42 days of the Effective Date. |

(12) That all claims in Civil Action No. 16-cv-00671-RM-NRN and No. 17-cv-01602-RM-NRN are dismissed with prejudice;

(13) That the Clerk shall also file this Order in Civil Action No. 17-cv-01602-RM-NRN;

(14) That the Clerk shall enter a **FINAL JUDGMENT** in Civil Action No. 16-cv-00671-RM-NRN and No. 17-cv-01602-RM-NRN; and

(15) That the Clerk shall close Civil Action No. 16-cv-00671-RM-NRN and No. 17-cv-01602-RM-NRN.

DATED this 20th day of July, 2020.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge